Argued September 20, 1978, reversed January 15, 1979

HILL, *Petitioner,*
*v.*
STATE ACCIDENT INSURANCE FUND,
*Respondent.*
(No. 77-4185, CA 11636)
588 P2d 1287

Allen T. Murphy, Jr., Portland, argued the cause for petitioner. With him on the brief was Richardson, Murphy & Nelson, Portland.

Kenneth L. Kleinsmith, Associate Counsel, Salem, argued the cause for respondent. With him on the brief were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, Salem.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

TANZER, J.

## TANZER, J.

The issues in this workers' compensation appeal are the construction of the 1975 amendment[1] to the definition of permanent total disability in ORS 656.206(1)(a) and whether claimant should have been classified as permanently totally disabled under the statute as amended.

### The Statute

The injury in this case occurred after the effective date of the 1975 amendment to ORS 656.206(1)(a) which defines permanent total disability. Prior to amendment, ORS 656.206(1)(a) read as follows:

> " 'Permanent total disability' means the loss, including preexisting disability, of both feet or hands, or one foot and one hand, total loss of eyesight or such paralysis or other condition permanently incapacitating the workman from regularly performing any work at a gainful and suitable occupation."

Under that statute, a worker with a scheduled injury could not recover more than the schedule allowed even if the injury made him unemployable in fact. *Kajundzich v. State Ind. Acc. Com.,* 164 Or 510, 102 P2d 924 (1940); *Jones v. Compensation Dept.,* 250 Or 177, 441 P2d 242 (1968). On the other hand, an individual with an unscheduled injury whose injury left him incapable of performing any services for which there exists a reasonably stable market, could be classified as permanently and totally disabled. *Swanson v. Westport Lumber Co.,* 4 Or App 417, 479 P2d 1005 (1971).

In 1975, the legislature recast the definition of permanent and total disability "in terms of a worker's inability to sell his or her services in a competitive market rather than solely in terms of physical incapacity." *Wilson v. Weyerhaeuser,* 30 Or App 403, 408, 567 P2d 567 (1977). ORS 656.206(1)(a) now reads:

---

[1] Or Laws 1977, ch 506, § 1.

" 'Permanent total disability' means the loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which *permanently incapacitates* the workman from regularly performing *any* work at a gainful and suitable occupation." (Emphasis supplied.)

■ This amendment purports to measure the benefits for a permanently incapacitating injury by the standard of employability. When the amendment was enacted the schedule itself was not repealed. Our task is to give effect to both the new amendment and the schedule, consistent with legislative intent. The legislative intent of the amendment was to deal specifically with permanent total disability from scheduled injuries and there is no indication of any intent to modify the definition of permanent partial disability.[2] Thus the amendment affects the compensation for a scheduled injury only if the result is permanent and total unemployability. The schedule remains the

---

[2] *See* statement of the proponent, Dean Killion, President of the Oregon AFL-CIO, in support of *Senate Bill 743, Senate Labor Committee*, March 24, 1975:

"3. This bill amends the law to allow individuals to recover permanent and total disability if they are found to be permanently and totally disabled in fact, even though their injury might only be to a scheduled member of the body.

"* * * * *

"* * * I would explain to the committee that under the present state of Oregon law, a workman can never be allowed to receive permanent and total disability compensation if he suffers an injury *only* to an arm, leg, eye or ear (hearing). Thus, a 64 year old logger with a fourth grade education whose only injury is a loss of one leg, is limited by the Oregon Workmen's Compensation Law to a payment of $8,250, for the loss of his leg, even though everyone will agree that he is totally disabled in fact. This is so because the Oregon courts have interpreted the Oregon law to mean that when we provide schedules of compensation for the eyes, ears, arms and legs, that once the scheduled amount of compensation has been paid, no additional compensation can be paid.

"I believe that this provision of the law is wrong and it has proved to be grossly unfair in some cases. If adopted, a decision will simply be made on all the evidence whether a given claimant's injuries are totally disabling or not. That decision-making process will not be hampered or restricted by any questions whether the injuries are, or are not, to scheduled or unscheduled areas of the body." (Original emphasis.)

[ 16 ]

operative standard for any scheduled injury which does not result in permanent total disability.

## The Claimant

■■ Claimant was injured when a lawnmower he was trying to start backfired, jerking his right arm. The injury was diagnosed as tendonitis and it has not improved. The medical consensus is that he has lost the function of his right arm. He is 50 years old, borderline retarded in verbal skills, in the dull to normal range for nonverbal skills, has not had more than a fourth grade education, and is functionally illiterate. He suffers from emphysema. His left arm was deformed by a childhood accident and has always been a hindrance in manual labor. The basic rule is that the employer takes the employee as he finds him. *Kehoe v. Ind. Accident Com.*, 214 Or 629, 332 P2d 91 (1958).

His previous jobs have all been manual labor. When his aptitude for job retraining was measured by a standard psychological test, he did not qualify for any of the 62 occupational aptitude patterns listed by the United States Department of Labor. A standard error of measurement was added to this and still he did not qualify. When a second standard of error was added, corresponding to the lower ten percent of the population, he qualified for only two of the occupational aptitude patterns. In practical terms this means that it will be virtually impossible for him to find anything but a manual labor job and the pre-existing impairment of his left arm and the work-related injury to his right arm have left him unable to perform any but the lightest type of manual labor. His lack of mental skills also makes it virtually impossible for him to be retrained. Even the sheltered workshops turned down his application for employment.

Given all of the above facts, we are of the opinion that claimant's hitherto marginal employability has now been eliminated following his scheduled injury. It may be argued that such a result will have the

undesirable effect of discouraging the employment of handicapped workers, but that socio-economic political judgment has been made by the legislature and the new statute is explicit. Under the new statutory scheme, we conclude that he is entitled to an award of permanent and total disability.

Reversed.