Argued and submitted March 12, reversed April 28, 1980

In the Matter of the Compensation of
EMERSON,
*Petitioner - Cross-Respondent,*
*v.*
ITT CONTINENTAL BAKING COMPANY,
*Respondent - Cross-Petitioner.*
(No. 78-3017, CA    15371)
610 P2d 282

Raymond J. Conboy, Portland, argued the cause for petitioner - cross-respondent. With him on the brief were Pozzi, Wilson, Atchison, Kahn & O'Leary and Garry L. Kahn, Portland.

Ridgway K. Foley, Jr., Portland, argued the cause for respondent - cross-petitioner. With him on the brief were Schwabe, Williamson, Wyatt, Moore & Roberts and Delbert J. Brenneman, Portland.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

The sole issue in this case is whether the claimant is permanently and totally disabled. We find that he is.

The facts may be summarized as follows:

The claimant was injured on October 24, 1975, when he slipped on some grease and fell, hitting his low back on a truck bumper. At the time of his injury, claimant worked as a janitor in a bakery. Claimant had held this job for the preceding 28 years. The job included using a very heavy floor sander.

Claimant's back pain was first diagnosed as resulting from an acute low back strain. However, a myelogram revealed an extruded disc at L 4-5. In June, 1976, claimant had back surgery which included excision of the extruded disc and decompression of the nerve roots at L5-S1.

Claimant's disability resulting from his back injury has been rated as mildly moderate. He still experiences back pain. His physicians have not said that he is incapable of working, but they have restricted claimant from performing any job which involves heavy lifting or repetitive stooping or bending. Claimant cannot return to his last job without violating all of these restrictions.

In addition to claimant's back disability, he suffers from a heart condition, *i.e.,* aortic valve disease. He also takes medication for hypertension.

Claimant is a deaf mute. He communicates by means of finger spelling and sign language and through written responses. His wife often serves as his interpreter. The medical reports are replete with references to the physicians' difficulty in communicating with the claimant.

At the time of the hearing, claimant was 53 years old. He has only a sixth grade education. His intelligence quotient is in the dull normal range. Apart from

one day of work in a furniture refinishing factory, claimant always has worked as a janitor.

After his back condition became stable, claimant sought vocational assistance. He was referred to the vocational section of the Board's Disability Prevention Division but that agency closed claimant's file, finding that it would be too difficult to rehabilitate claimant because he was too disabled.

Claimant also saw Dr. Rollins, a vocational rehabilitation consultant with experience in working with deaf adults. Dr. Rollins contacted a variety of agencies which work with deaf adults and certain employers, "who tend to go the extra mile on occasion for people with severe communication disorders," to see if they knew of, or had available any job for claimant. Dr. Rollins' efforts were unsuccessful.

Dr. Rollins concluded that claimant had "a severe occupational handicap," considering "the physical residual handicap of his industrial injury superimposed upon his deafness, limited communications skills and lack of occupational skills." Dr. Rollins stated,

> "In my opinion he is not a good candidate for retraining with the marginal educational background he possesses, because of his age and the communications deficit. The only possible work potentials which I could envision would fall within sheltered workshop facilities and I was unable to demonstrate the existence of gainful and suitable work activities there."

Dr. Rollins described claimant as "cooperative and delightful." Dr. Rollins emphasized that claimant was "very sensitive to the work ethic" and noted that claimant had "worked and been continuously employed since his teen years."

At the time of the hearing, claimant was capable of doing some work in his garden and yard. He could work for about two hours and then would have to stop due to back pain.

Following the hearing, the referee found that claimant was permanently and totally disabled. The Board reduced this award to 75 percent of the maximum allowable for unscheduled disability.

Claimant appeals contending that he is permanently and totally disabled. The employer cross-appeals arguing that the Board's award is excessive. We agree with the claimant and reverse.

At the time of claimant's injury, ORS 656.206(1)(a) defined "permanent total disability" as meaning

"* * * the loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which permanently incapacitates the workman from regularly performing work at a gainful and suitable occupation. * * *"[1]

The claimant is permanently and totally disabled. Before his injury, claimant had limited vocational

---

[1] ORS 656.202(2) provides:

"Except as otherwise provided by law, payment of benefits for injuries or deaths under ORS 656.001 to 656.794 shall be continued as authorized, and in the amounts provided for, by the law in force at the time the injury giving rise to the right to compensation occurred."

As we have noted, claimant was injured on October 24, 1975. After his injury, in 1977, ORS 656.206, as set out above, was amended. The definition of permanent total disability, contained in ORS 656.206(1)(a) was expanded to add,

"As used in this section, a suitable occupation is one which the worker has the ability and the training or experience to perform, or an occupation which he is able to perform after rehabilitation."

ORS 656.206(3) was added to the statute. That section reads:

"(3) The worker has the burden of proving permanent total disabililty status and must establish that he is willing to seek regular gainful employment and that he has made reasonable efforts to obtain such employment."

The version of ORS 656.206 in force at the time of claimant's injury applies in this case. ORS 656.202(2); *Bradley v. SAIF,* 38 Or App 559, 590 P2d 784 (1979).

In any event, and irrespective of the general significance of the 1977 changes in ORS 656.206, we find claimant to be permanently and totally disabled under either version of the statute. The evidence establishes that claimant is willing to seek regular gainful employment and that he has made reasonable efforts to find such employment.

resources. He is a deaf mute, with a sixth grade education and dull normal intelligence. The claimant has difficulty communicating. Many of the physicians' reports reflect this difficulty.[2]

Despite these limited resources, claimant had worked steadily as a janitor until his injury. He worked at his last job for 28 years. The record does not indicate that claimant has any other vocational skills. Claimant sought vocational assistance or retraining, but he was rejected. Dr. Rollins' efforts were unsuccessful.

The employer emphasizes that claimant's physical disability alone does not render him permanently and totally disabled. Claimant still could do work not involving heavy lifting or repetitive bending or stooping. However, claimant's disability need not flow solely from his physical incapacity. *Wilson v. Weyerhaeuser,* 30 Or App 403, 567 P2d 567 (1977).

Here, claimant's back injury superimposed on his heart condition, his age, his limited personal resources and vocational experience has left claimant unable to compete in the job market.

The referee is the only fact finder who observed claimant's difficulty with communication. The claimant testified at the hearing using his wife as an interpreter. Both the Board and this court have had to rely on an unusually cold record which contains only the wife's interpretation. The referee saw the claimant testify. Her opinion and order indicates that, in evaluating claimant's disability, she relied on her observations of claimant. *See Hannan v. Good Samaritan Hosp.,* 4 Or App 178, 471 P2d 831, 476 P2d 931

---

[2] Two reports submitted by one of claimant's treating physicians suggest that claimant has "retired." The employer relies on these comments, but it is probable that the reports reflect the physician's inability to communicate with the claimant, rather than the claimant's retirement. The physician often had noted the difficulty in communicating with the claimant. The retirement comments are anomalies in the record. The claimant denied that he wanted to retire. Dr. Rollins, the only observer who could understand claimant's finger spelling and signing without interpretation, felt that claimant was motivated, not retired and that he wanted to return to work.

(1970), *rev den,* (1971). The referee stressed that claimant's "communication with prospective employers [would be] extremely difficult." This is a case where observation of the claimant is particularly important. Only the referee had the opportunity to observe the claimant. We give the referee's determination in this regard some weight in holding that claimant is permanently and totally disabled.

Reversed.