Argued and submitted September 19, reversed October 27, 1980

In the Matter of the Compensation of
LOHR,

*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND,
*Respondent.*

(No. 79-2950, CA 17780)

618 P2d 468

Jeffrey P. Foote, Portland, argued the cause for petitioner. On the brief was John J. Haugh, Portland.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund, Salem, argued the cause for respondent. With him on the brief were K. R. Maloney, General Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Claimant appeals an order of the Workers' Compensation Board (Board) reversing a referee's finding of permanent total disability and awarding claimant 22.5 degrees for 15 percent loss of the use of his right leg as a result of a compensable knee injury. We reverse the Board.

Claimant is a 42 year old former millworker who injured his right knee in a fall on May 20, 1976. He received immediate medical treatment and returned to work. His knee continued to give him trouble and he was unable to continue working. A right medial menisectomy was performed on April 11, 1977, followed by further knee surgery on July 17, 1978. On November 24, 1978, claimant's treating physician found him to be medically stationary, but reported that claimant could not perform work requiring repetitive bending, squatting, kneeling, or heavy lifting or climbing. Claimant testified he has continual pain in his knee and that it sometimes gives out, causing him to fall.

A determination order awarded claimant a total of 22.5 degrees for 15 percent loss of the use of his right leg, as evaluated by claimant's doctor.[1] The referee found claimant permanently and totally disabled. The Board reversed the referee and reinstated the determination order award.

Claimant is totally deaf in both ears. His hearing loss apparently occurred over a period of years as a result of his exposure to extreme noise levels on the job.[2] He speaks loudly and with a definite speech impairment. The doctors who examined or treated claimant reported serious difficulty in communicating with him. His wife sometimes serves as an interpreter

---

[1] There were two determination orders, each following the claimant's physician's evaluations. The physician evaluated claimant's disability at 15 degrees and 10 percent loss of the use of his leg after the first knee surgery, and reported an additional 7.5 degrees for a further 5 percent loss of use after the second knee operation.

[2] It is not clear from the record why claimant did not file a claim for the hearing loss or, if he did, what the outcome of that claim was.

because claimant can read her lips better than he can those of others. He and his wife have also worked out their own set of hand signals to aid in their communication. His wife helped to interpret for him at the hearing.

Claimant sustained a back injury in 1974, as a result of which he missed about three month' work. He was awarded no permanent disability as a result of that injury, although he and his wife testified that he still has trouble with his back.

At the time of the knee injury, claimant was a barker operator. After he injured his knee, claimant returned to work for a time at the mill, where he had worked since 1967. The mill later closed down permanently during the time that claimant was under treatment.

When he was able to do so, claimant began looking for work in mills in both Oregon and Washington. He testified that mill work is all he knows and that he asked for any jobs that were available. He was consistently told that, because of his deafness, he presented too great a safety hazard for any job he was qualified for and able to perform. He attempted to find work through the state employment agency, but was unsuccessful. Although he had had truck driving experience, he testified that he could not get a job driving a truck because of his inability to hear and because his knee problems prevented him from operating the pedals.

Claimant worked for a time with his son pulling axles from beneath trailers, but had to stop when his son, who had been doing the heavy labor, joined the army. His knee and back problems prevented him from doing the job by himself.

Claimant has a sixth or seventh grade education and reads poorly. He has always done heavy physical labor and has no training or work skills for any other type of work. In addition to the fact of his deafness, his inability to communicate has hindered his search for work.

A witness who had worked with claimant and is now superintendent of a pallet company testified that he knew of no jobs claimant could do in a mill because of the restrictions on his activities resulting from his knee injury and because of his deafness. He also noted that the communication problem alone would make it difficult for him to hire claimant.

At the time of claimant's injury, ORS 656.206(1)(a) defined permanent total disability as

"(a) * * * the loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which permanently incapacitates the workman from regularly performing any work at a gainful and suitable occupation."

*See Emerson v. ITT Continental Baking Co.,* 45 Or App 1089, 610 P2d 282 (1980). The referee found that, based on his preexisting condition, the compensable knee injury and lack of skills or training for anything other than heavy labor, claimant is entitled to an award of permanent total disability. He found that claimant is willing to seek regular employment and has made a reasonable effort to do so. The Board's subsequent order reversing the referee and awarding 22.5 degrees does not explain its rationale for considering only claimant's knee injury.

■    While it is clear that claimant's knee injury alone would not support an award of permanent total disability, claimant's preexisting disabilities, *Kehoe v. Ind. Accident Com.,* 214 Or 629, 332 P2d 91 (1958); *Hill v. SAIF,* 38 Or App 13, 588 P2d 1287 (1979), as well as contributing nonmedical factors must be considered in determining whether claimant is permanently and totally disabled. *Wilson v. Weyerhaeuser,* 30 Or App 403, 567 P2d 567 (1977); *Emerson v. ITT Continental Baking Co., supra; Mansfield v. Caplener Bros.,* 10 Or App 545, 500 P2d 1221 (1972).

■    We agree with the referee that claimant has shown that he has made a reasonable effort to find employment. Although most of his efforts have been directed towards finding work in a mill, claimant did try unsuccessfully to get a job driving a truck and he

did look for work through the state employment agency. He found a job pulling axles from under trailers when his son was available to do the heavy labor involved, but was unable to continue the job on his own when his son joined the army.

■    The Board's order recommends that extensive Field Service Division assistance be provided to claimant and that he be assisted with job placement. SAIF argues on appeal that claimant, at his relatively young age, should be retrainable. The Supreme Court, however, has recently interpreted the current version of ORS 656.206(1)(a), a version which provides that a "suitable occupation" includes one which the claimant "is able to perform after rehabilitation," by stating:

> "* * * [T]he language of this statute, which speaks in the present tense, precludes cancellation of a permanent total disability award based upon a speculative future change in employment status. In other words, whether this claimant is permanently totally disabled must be decided upon conditions existing at the time of decision, and his award of compensation for permanent total disability can be reduced only upon a specific finding that the claimant presently is able to perform a gainful and suitable occupation." *Gettman v. SAIF,* 289 Or 609, 614, 616 P2d 473 (1980).

The statute in effect at the time of claimant's injury in this case did not refer to "rehabilitation" in the definition of "suitable occupation." There is, therefore, even less basis for holding that, under the former statute, an award of permanent total disability should be denied on the basis of "a speculative future change in employment status."

■    On *de novo* review, ORS 656.298(6), we find that the record amply demonstrates that claimant has made a reasonable effort to find suitable employment without success. We conclude, as did the referee, that the knee injury, combined with claimant's deafness, inability to communicate, minimal education and limited work skills, has rendered claimant permanently and totally disabled at the present time. As noted by the court in *Gettman v. SAIF, supra,* 289 Or at 615,

such an award can be adjusted if claimant, at some point in the future, through vocational rehabilitation or otherwise, is no longer permanently incapacitated from regularly performing work at a gainful and suitable occupation. *See* ORS 656.268(5); ORS 656.278.

The order of the Workers' Compensation Board is reversed and the order of the referee is reinstated.

Reversed.