Argued and submitted October 26, 1981,
order modified January 6, 1982

In the Matter of the Compensation of
Katherine Casteel, Claimant.

### CASTEEL,
*Petitioner,*

*v.*

### STATE ACCIDENT INSURANCE FUND CORPORATION,
*Respondent.*

(WCB Case No. 80-01021
and 80-04530, CA A21441)

638 P2d 1165

Robert K. Udziela, Portland, argued the cause for petitioner. With him on the brief was Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund, Salem, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

ROBERTS, J.

### ROBERTS, J.

In this Workers' Compensation case the referee determined that claimant is permanently and totally disabled; the Board reversed, awarding 10 percent disability for a back condition. We modify the award.

Claimant is a 66-year-old woman who has been employed principally as a restaurant worker, except for work as a shipyard pipe-welder during World War II. She suffered her first compensable injury in October, 1976, when she injured her back. She was hospitalized for a week and wore a back brace for a while. She returned to work in June, 1977. In June, 1978, she suffered a job-related fracture of her right hip. She attempted to return to work in June, 1979, but worked only as a "relief" worker two days a week. She attempted to take a full-time job but was unable to continue after one week. Claimant has other health problems, including diabetes and a heart condition, which are not job related.

The referee stated in his opinion,

"* * * I find that the last injury, the hip injury, is the final precipitating and material cause of her inability to work. The evidence is not clear that the back injury continued to be a material contributing cause of the subsequent deterioration in her back, and the denial of the aggravation claim should be approved. All pre-existing disability, whether or not industrially related, must of course be considered in evaluating the loss of earning capacity after the last industrial injury. * * *."

The Board disagreed with the referee's decision, saying:

"It is inexplicable to the Board how the Referee could have concluded that claimant was permanently and totally disabled from his findings that (1) claimant had not proven her back condition had worsened since the September 20, 1977 Determination Order which awarded no permanent disability and (2) claimant had a normal functioning hip."

As to the back condition, the referee found deterioration, but did not relate it to the initial back injury. The Board, on the other hand, found the medical evidence established an aggravation,[1] which was the basis of the 10

---

[1] The Board said,

"This evidence does not establish a compensable worsening of claimant's back condition. If there are more compression fractures now than there were

percent award. Because we agree with the Board that there was an aggravation of the back condition, we affirm that decision, but we believe the award should have been greater.

■ ■ The treating doctor's report, dated March, 1979, indicates that claimant must use a "quad cane" to get around, that her back symptoms are frequently very troublesome and limit her mobility and that, in spite of an excellent recovery from the hip surgery, "she is still considerably disabled from her back symptoms and probably will need to engage in a sedentary occupation from now on." In February, 1980, the same doctor wrote that "[s]he seems to have deteriorated considerably over the past two years, and I think she is no longer fit for employment *at this stage.*" (Emphasis supplied). We interpret this to mean that, while claimant's condition had deteriorated, it was not impossible that it might improve so that she could again become regularly employed. This doctor noted, for instance, that claimant had become obese but declined to indicate if this fact affected her back problem. We conclude that the medical evidence does not establish permanent total disability.[2]

Claimant is correct in arguing that ORS 656.206(1)(a),[3] which defines "permanent total disability," includes

in 1976, nothing in the evidence documents any connection with the 1976 injury or any other connection with claimant's work. Claimant's generalized osteoporotic change is, so far as we can tell from this record, merely natural degeneration consistent with claimant's age and not connected with her work or 1976 back injury.

"There is one other item of evidence that does lend some support to claimant's aggravation claim. Dr. Duff's May 1, 1978 report compared 1976 x-rays: 'The fracture of L-1 has changed over the period between the two films, and there is about 50 percent loss of height now as compared with 20 percent previously * * *. [The] compression fracture of L-1 * * * seems to be progressively settling, and it is probably responsible for her pain.' This medical evidence, albeit cryptic, combined with claimant's testimony about her subjective difficulties, does lead us to the conclusion that claimant has established a compensable worsening of her back condition."

[2] Claimant's original treating physician, who retired in 1979 and referred her to Dr. Duff, had found her "totally and permanently disabled *so far as working at her regular occupation as cook is concerned.*" (Emphasis supplied.)

[3] ORS 656.206(1)(a) provides:

" 'Permanent total disability' means the loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body

pre-existing disabilities. *Hill v. SAIF,* 38 Or App 13, 588 P2d 1287 (1979); *Lohr v. SAIF,* 48 Or App 979, 618 P2d 468 (1980). However, even adding claimant's other physical problems into the calculation with the compensable injury, no finding of permanent total disability results. Claimant's own testimony fails to demonstrate that the non-job-related ailments contribute to her inability to be employed.[4]

The remaining question is the determination of an appropriate award. The extent of permanent partial disability is measured by the loss of earning capacity due to the compensable injury, taking into account age, education, training, skills and work experience. ORS 656.214(5); *Smith v. SAIF,* 51 Or App 833, 836, 627 P2d 495 (1981);

---

which permanently incapacitates the worker from regularly performing work at a gainful and suitable occupation. As used in this section, a suitable occupation is one which the worker has the ability and the training or experience to perform, or an occupation which he is able to perform after rehabilitation."

[4] Claimant's pertinent testimony follows:

"Q You said you had surgery for your eye condition in '78. As near as you can recall, was it before or after your hip surgery?

"A It was before.

"Q Okay.

"A I had laser surgery.

"Q All right. Has that stabilized your eye condition?

"A It apparently has, because they told me, at the time, that I — if it didn't work, I'd be totally blind in a few weeks time, and I can still see.

"Q Have you had to have your prescription changed for your glasses?

"A Oh, yes.

"Q You're still able to see all right with the glasses?

"A Yes.

"Q All right. And you haven't been hospitalized for the diabetic condition, say, for the last three years or so?

"A I've never been hospitalized for it.

"Q And you haven't been hospitalized because of the heart problems in that same period of time?

"A No.

"Q Do you take anything for the heart problem?

"A Oh, yes. I have one pill I have to take once a day and one I take twice a day."

*Harris v. SAIF,* 55 Or App 158, 637 P2d 1292 (1981.) The evidence indicates claimant is more than 10 percent disabled; however, it does not persuade us that claimant is permanently and totally disabled. We conclude an award of 50 percent unscheduled partial disability is appropriate under the circumstances.

The order of the Board is modified to award 50 percent permanent partial disability.