Argued and submitted February 23, reversed and remanded with instructions
April 27, reconsideration denied June 10, petition for review denied
July 6, 1983 (295 Or 297)

In the Matter of the Compensation
of Dixie Fitzpatrick, Claimant.

FITZPATRICK,
*Petitioner,*

*v.*

FREIGHTLINER CORPORATION,
*Respondent.*

(WCB No. 80-07316; CA A25354)

662 P2d 8

Janet A. Metcalf, Portland, argued the cause for petitioner. With her on the brief were English & Metcalf, Douglas S. Green, and Welch, Bruun and Green, Portland.

Scott M. Kelley, Portland, argued the cause for respondent. With him on the brief was Cheney & Kelley, P.C., Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Claimant appeals from an order of the Workers' Compensation Board reversing the referee's award of permanent total disability and awarding her 80 degrees for 25 percent permanent partial disability in addition to that granted by all prior determination orders. We reverse and reinstate the referee's award.

Claimant was injured in 1972 when she was attempting to free a jammed punch press. The die fell, cutting off most of her left hand. Claimant is naturally left-handed. She had undergone seven operations on the hand by 1975. In June, 1975, she began experiencing right-hand pain. By late 1977, she had developed colitis, and in 1978 the referee found, that that condition was causally related to the hand injury, finding employer responsible. In August, 1980, claimant also received an award for right arm disability.

In all, claimant has received: an award equal to 90 percent for the left forearm and 10 percent unscheduled disability to the back (1974); 5 percent unscheduled disability for injury to the "thorax" (1977); and a 10 percent unscheduled disability award for psychological disability and a 5 percent award for the right arm (1980). All of the awards are causally related to the 1972 injury.

At the hearing, claimant testified that she has right and left-shoulder pain and cannot use her left hand because of pain, swelling and cramps. Her right hand is swollen and painful. She cannot eat by herself, write letters, wash her own hair or clean her house. She has difficulty holding onto objects. Because of her colitis, she must make frequent trips to the bathroom. As a result, she cannot travel or engage in long-term activities. Her colitis also makes it difficult for her to entertain friends in her home. Other problems include screaming nightmares, pain in her chest and back and swelling in her legs. She is depressed and potentially suicidal.

The referee found that claimant was permanently totally disabled. The Board reduced this award to 50 percent of the maximum for unscheduled disability in addition to her previous awards, noting that claimant had not looked for work since her injury.

Claimant contends that her physical and psychological disabilities combine to leave her permanently totally disabled. Any attempt to seek work, she claims, would be futile and psychologically impossible and therefore she should be exempt from the requirement that she seek work.

■　　The statute governing this case, ORS 656.206(1), provides:

> " 'Permanent total disability' means the loss, including preexisting disability, of both feet and hands, or one foot and one hand, total loss of eyesight or such paralysis or *other condition permanently incapacitating the workman from regularly performing any work at a gainful and suitable occupation.*" (Emphasis supplied.)[1]

The Board concluded that claimant is subject to the seek-work requirement of ORS 656.206(3)[2] and that, because she has made no job search since at least 1975, she is not permanently and totally disabled. The burden of establishing permanent total disability is on claimant. *Wilson v. Weyerhaeuser*, 30 Or App 403, 567 P2d 567 (1977).

The issue then is whether, under the circumstances, it would have been futile for claimant to have attempted to find employment. As this court stated in *Wilson v. Weyerhaeuser, supra,* 30 Or App at 412:

> " 'A broken body can cause a broken spirit,' *Seaberry v. SAIF,* 19 Or App 676, 683, 528 P2d 1103 (1974), and the point on the spectrum between psychopathological and attitudinal breakage at which each case falls is a question of degree which the fact finder must infer from all the evidence. * * *

---

[1] ORS 656.206(1)(a), the present statute, provides:

" 'Permanent total disability' means the loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which permanently incapacitates the worker from regularly performing work at a gainful and suitable occupation. As used in this section, a suitable occupation is one which the worker has the ability and the training or experience to perform, or an occupation which the worker is able to perform after rehabilitation."

[2] ORS 656.206(3) was not in effect in 1972 when claimant was first injured. It reads:

"The worker has the burden of proving permanent total disability status and must establish that the worker is willing to seek regular gainful employment and that the worker has made reasonable efforts to obtain such employment."

"* * * [E]vidence of the existence or absence of motivation is not essential to the establishment or disproof of a claim of permanent total disability. Rather, when odd-lot status is in issue and such evidence is offered, it is to be weighed by the fact finder, free from talismanic significance and procedural consequences, along with all other evidence from either party which reflects on the existence, nature and scope of disability."

■ It is obvious that claimant experiences severe difficulties in her day-to-day life. She is in constant pain, must be close to a bathroom at all times and suffers acute depression, according to her psychiatrist.

The record indicates that claimant did attempt to reenter the job market shortly after the 1972 accident. However, vocational rehabilitation was not successful, primarily due to her constant pain. She has a sixth-grade education and went to school in an attempt to pass the GED tests. Because of the loss of use of her writing hand and the constant pain she has endured, she has never passed the final test. Her experiences in vocational rehabilitation have not been pleasant or successful, and this has depressed her to the point that she feels it is useless to try anything. A psychologist at the Callahan Center concluded that claimant was an extremely unlikely candidate for return to gainful employment. Her psychiatrist, Dr. Janzer, has been treating her since 1977, counseling her to prepare her to reenter the job market and to pursue vocational rehabilitation. His testimony was that such preparation has not occurred because of her many disabilities and that it is unlikely that he can prepare her to seek work. Janzer concluded that she is permanently and totally disabled.

The referee concluded that claimant is so physically and mentally disabled that it would be a useless act for her to apply for work. We agree. The record, in its entirety, clearly indicates that this is a person whose physical injuries have resulted in her broken spirit, making her unemployable at any gainful and suitable occupation. *See Seaberry v. SAIF,* 19 Or App 676, 528 P2d 103 (1974); *Morris v. Denny's,* 50 Or App 533, 623 P2d 1118 (1981). We reverse the Board and find that claimant has met her burden of proof that she is permanently totally disabled.

Claimant next contends that her disability was permanent and total as of August 5, 1980. On that date, a determination order was signed granting claimant temporary total disability from February 18, 1978, through January 15, 1979, and from February 16, 1979, through July 6, 1980, and 32 degrees for 10 percent unscheduled disability resulting from psychological injury and 19.2 degrees for 10 percent loss of her right arm. This was in addition to previous awards. Claimant requested a hearing, claiming she was permanently totally disabled. This appeal is the result of many subsequent proceedings. Her condition has not changed since August 5, 1980.

■ The general rule for determining the date on which permanent total disability benefits should be paid in cases where permanent total disability is based on the combination of a physical condition and psychological problems that follow was set out in *Wilke v. SAIF,* 49 Or App 427, 619 P2d 950 (1980). In *Morris v. Denny's,* 53 Or App 863, 867, 633 P2d 827 (1981), the court summarized the *Wilke* rule:

"* * * When an award has been modified, the effective date of that modification is the earliest date that claimant's permanent total disability is proved to have existed."

This can be pinpointed by a doctor's report.

■ In his letter dated July 16, 1980, Dr. Janzer reported that he had determined that claimant's mental status had "now reached the same level as her physical condition and should be regarded as stationary." Although claimant requested a slightly later date, a review of the record indicates that claimant was permanently totally disabled as of July 16, 1980.

Reversed and remanded with instructions to award claimant permanent total disability as of July 16, 1980.