On petitioner's reconsideration filed November 7, and respondent's reconsideration filed November 3, petitioner's reconsideration denied; respondent's reconsideration allowed; former opinion (64 Or App 826, 669 P2d 1154 (1983)) withdrawn; affirmed January 11, petitioner's reconsideration denied February 24, petitioner's petitions for review denied March 27, 1984 (296 Or 712)

In the Matter of the Compensation
of George N. Wilkins, Claimant.

WILKINS,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(WCB No. 79-02117; CA A25408)

674 P2d 78

Robert K. Udziela, and Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland for petitioner's petition.

Brian L. Pocock, Eugene, for respondent's petition.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

.

## WARREN, J.

Both parties petition for reconsideration. We deny claimant's petition. SAIF petitions for reconsideration of our decision reversing the Workers' Compensation Board and holding that SAIF acted unreasonably in delaying five years before issuing a denial and, therefore, was barred from denying the claim on that date. Subsequent to our decision in this case, the Supreme Court issued *Bauman v. SAIF,* 295 Or 788, 670 P2d 1027 (1983), which held that, once a claim is accepted, it cannot later be denied in the absence of "a showing of fraud, misrepresentation or other illegal activity." 295 Or at 794. We grant SAIF's petition for a further analysis of the facts in light of *Bauman.*

■ SAIF alleges that claimant's entire claim was a fraud, because the accident did not happen. The referee, after evaluating all of the evidence, stated that "it is impossible to believe that the accident occurred." The Board agreed with that finding. Both the referee and the Board found claimant not credible. Although we are not bound to do so, we normally defer to a referee's findings of credibility, because he was actually able to observe the witnesses. *Miller v. Granite Construction Co.,* 28 Or App 473, 477, 559 P2d 944 (1977). After a *de novo* review of the evidence, we agree with the referee and the Board that the preponderance of the evidence supports SAIF's contention that the accident alleged by claimant never actually occurred.

In claimant's testimony he gave an improbable description of the accident, in which he claimed he suffered a double hip dislocation. His testimony was filled with inaccuracies as to objective factors, such as the weather on the date in question. He asserted that it had felt like an explosion in his hips when he fell to the ground, that he crawled to his truck and that he was thereafter able to drive the truck a substantial distance. He did not seek medical attention until seven days later. He testified that he told his foreman about the accident and attempted to use the company radio to get help. However, the uniform testimony of all of his co-employes is that he never reported the accident to anyone until the date on which he sought medical attention seven days later.

Medical evidence indicates that it is "highly unlikely" that a double hip dislocation would occur from a fall described by claimant. That a double hip dislocation would spontaneously resolve itself, as claimant described, is even less likely. Dr. Brooke testified:

"Q Okay. Do you have an opinion, based on reasonable medical probability, whether or not it is probable that Mr. Wilkins dislocated his hip, one or both hips, on November 6th, 1975 and that a reduction occurred spontaneously at that time?

"A Yes, sir.

"Q What is your opinion?

"A Think it's highly unlikely.

"Q And why do you have that opinion?

"A Well, I have been at this a long time. I've not seen any cases of a dislocation that was spontaneously reduced — of the hip — nor have I ever heard of one. And the, if a hip is spontaneously dislocated, the pain is pretty severe. They are difficult cases to put back in, in the first place, even if they are dislocated. So I would doubt that this actually happened.

"* * * * *

"A Well, when the hip is dislocated, they are in extreme pain, usually with a hip flexed. And with internal rotation, they are, they bitterly resent any movement or examination of that extremity. After the hip is reduced, a considerable amount of pain persists for three to six weeks until the capsule heals.

"Q Okay. How is dislocated hip normally reduced, medically?

"A Well, to dislocate — to reduce a dislocation of the hip requires rather profound general anesthesia, so you get a relaxation of the powerful hip muscles. Without that, they usually won't go back.

"* * * * *

"Q Okay. Now, you have expressed the opinion that it's highly unlikely for this to occur with regard to one hip.

"A Yes, sir.

"Q How unlikely is it for that to occur with both hips?

"A Well, I think that's almost a ridiculous statement, to have occurred simultaneously."

The evidence also establishes that before the asserted accident claimant had mild to moderate degenerative arthritis in both hips and a severe problem with alcohol, which the medical evidence indicates could have caused the current problem in his hips. Claimant has asserted a claim for an accident that we conclude never occurred. A carrier's proof that a claim was fraudulent justifies its denial, even after the claim has once been accepted.

The Supreme Court in *Bauman* did not place any time limitation on denying a claim for fraud. We therefore withdraw our former opinion, grant reconsideration and affirm the Board.

Petitioner's petition for reconsideration denied; respondent's petition for reconsideration allowed; former opinion withdrawn; affirmed.