Argued and submitted November 15, reversed, referee's order reinstated
February 27, 1985

In the Matter of the Compensation of
Chester A. Clark, Claimant.

## CLARK,
*Petitioner,*

*v.*

## BOISE CASCADE CORPORATION,
*Respondent.*

(82-10864; CA A31356)

695 P2d 967

398

Gerald C. Doblie, Portland, argued the cause and filed the brief for petitioner.

Mildred J. Carmack, Portland, argued the cause for respondent. With her on the brief were Paul R. Bocci, Jr., and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

**ROSSMAN, J.**

Claimant seeks review of an order of the Workers' Compensation Board, which reversed the referee and held that claimant was not permanently and totally disabled. We reverse.

 Several basic rules and principles are involved in the resolution of this kind of case. First, and foremost, in order to meet his burden of proving that he is permanently and totally disabled, a claimant must establish that he is unable to perform any work at a gainful and suitable occupation. *Wilson v. Weyerhaeuser,* 30 Or App 403, 408-09, 567 P2d 567 (1977). Although this claimant's permanent impairment is quite substantial, he does not exhibit total incapacity, physically or medically. Because he is capable of performing some work, he can succeed in his permanent and total disability claim only by proving that he falls within the so-called "odd-lot" doctrine. The import of that doctrine is that a disabled person, capable of performing work of some kind, may still be permanently disabled due to a combination of his physical condition and certain nonmedical factors, such as his age, education, adaptability to nonphysical labor, mental capacity and emotional conditions. *See Livesay v. SAIF,* 55 Or App 390, 637 P2d 1370 (1981).

██ ██ A claimant's motivation is also a key factor, and the burden is on him to establish that he is willing to seek regular gainful employment and that he has made reasonable efforts to obtain such employment. ORS 656.206(3). Finally, a permanent total disability award cannot be reduced on the basis of a speculative future change in employment status but only on the actual conditions existing at the time of the hearing. *Gettman v. SAIF,* 289 Or 609, 616 P2d 473 (1980); *Morris v. Denny's,* 50 Or App 533, 623 P2d 1118 (1981).

Claimant is a 44-year-old man, whose pre-injury work experience has been limited to manual labor jobs, including automobile body and fender work, ranch hand, roofing, cannery work, carpentry, truck driving, swimming pool construction, dry chain puller, press helper and patching and spreaderman. He has not worked since he sustained an industrial injury to his left hip in 1974, except for a three-month stint at cartographic drafting in late 1979 and early 1980. Since that time, he has had three surgeries on his hips,

including a bilateral hip replacement. The medical reports are uniform that he cannot return to any form of heavy labor and cannot do heavy lifting or prolonged walking. He is blind in his right eye, which causes difficulties in very close work. He is deaf, or nearly deaf, in his right ear. His mechanical aptitude, math, drawing ability and capacity for schooling are below average. He has significant emotional and personality difficulties, including "atypical adjustment disorder with mixed emotional features and schizoid, paranoid, and somatization tendencies."

Claimant did not attend school until he was 13 years old and received only six years of education. However, subsequent to his injury, he has received a GED and studied drafting for two years at Chemeketa Community College. That is what enabled him to do the previously mentioned work as an assistant cartographic drafter with the Oregon State Forestry Department for a 90-day federally funded appointment. That involved map tracing, work which is not generally available in the job market. Even when it was available, claimant performed at below average speed and skill. Thus, Vocational Rehabilitation determined that working as a draftsman was not a reasonable vocational goal for claimant.

Claimant was evaluated at the Callahan Center, where it was concluded that he was unable to work in the drafting field, had a significant disability and would require additional training to be employable. The center referred him to Anthony Iannarone, a private vocational rehabilitation counselor, who worked with him to develop an authorized training program. Iannarone concluded that there was no recognized job where claimant could sell his services in the labor market. He testified that they were setting up a vocational rehabilitation training as an appliance repairman at Sunrise Services, which would be a nine-month training course to begin after the hearing. However, he stated that, even when this was completed, claimant would probably not be able to compete in the general job market, because appliances and parts would have to be brought to him in small lots to be repaired and then taken back. These conditions are not available in the general job market.

The referee awarded claimant permanent total disability as of August 27, 1982. The Board reversed and awarded 60 percent unscheduled permanent disability and 75 percent scheduled disability for loss of use of his left leg.

Employer contends that claimant has failed to show that he is not able to engage in regular, gainful employment. It points to evidence in the record that claimant has the physical ability and basic skills to perform a variety of light bench work. Employer acknowledges that claimant may require a period of subsidized training in order to perform many of these jobs but argues that claimant has not shown that such preparation would be required in order to perform all the kinds of light bench work jobs which might be within claimant's capabilities.

■ Based on our *de novo* review of the record, we, like the referee, believe that the report and testimony of Iannarone and the conclusion of the Callahan Center vocational assessment team are particularly persuasive. It seems quite clear that claimant is not *presently* employable in the general labor market. Granted, he may become employable in the future with sufficient training preparation, but, under the earlier noted rule of *Gettman,* we must focus on claimant as his circumstances *now* exist, without regard to how his employability may change at some point in the future. The controlling facts in this case bear a remarkable resemblance to the facts in *Welch v. Banister Pipeline,* 70 Or App 699, 690 P2d 1080 (1984), in which we held that claimant was permanently and totally disabled. In both cases, the evidence provided that the claimant, though relatively young, could no longer perform the type of work which he had always done and was disabled from multiple causes from any other kind of work. We hold that this claimant has established by a preponderance of the evidence that he is permanently and totally disabled.[1]

Regardless of the applicability of *Gettman,* the

---

[1] As the referee pointed out in his opinion and order:

"* * * If through training [claimant] becomes employable in the future, his status can be reassessed pursuant to ORS 656.206(5). In fact, if his authorized training program * * * is approved by the Field Services Division, claimant's permanent disability status will be reassessed pursuant to ORS 656.268 once the rehabilitation/training program has been completed."

employer argues that it still is entitled to win this case because of claimant's lack of motivation. It apparently relies on a single incident which happened when claimant was taken by his vocational rehabilitation counselor to a potential job training site. The counselor previously had seen claimant in his office and at his home, and on neither occasion had claimant used a cane. Yet he appeared at the potential job training site heavily relying on a cane in walking through the plant. The job counselor concluded from that that claimant had attempted to convince the employer that he was not capable of doing the work.

■ . After reviewing all the evidence, we do not find this to be persuasive evidence of lack of motivation on claimant's part. Previous medical and vocational rehabilitation reports frequently mention that claimant used a cane. On the two occasions when the counselor had seen claimant previously, he had been sitting in an office and in his house. Surely, there would be no overwhelming need for claimant to use a cane on those occasions. In any event, the medical reports establish that claimant has substantial limitations in his walking ability. It was not unreasonable for him to use a cane when he was to be taken on a tour of a potential job site. Further, the job counselor himself stated that the job training at that particular site, as it was presented to claimant, would not have fit his limitations, and no attempt was ever made to see if the position could be modified. After this incident, claimant was cooperative in all attempts of vocational rehabilitation to find training for him. He even consented to a nine-month training program to prepare him for a particular job, for which the vocational rehabilitation counselor testified there is no market. We believe that claimant's extensive cooperation with Vocational Rehabilitation establishes motivation.

We conclude that claimant is entitled to an award of permanent total disability as of August 27, 1982, as originally awarded by the referee.

Reversed; referee's order reinstated.