Argued and submitted July 17, 1985, reversed and remanded January 8, 1986

## In the Matter of the Compensation of
## Robert E. Lee, Claimant.

### LEE,
*Petitioner,*

*v.*

### FREIGHTLINER CORPORATION,
*Respondent.*

### (WCB No. 82-08616; CA A33688)

712 P2d 836

Robert K. Udziela, Portland, argued the cause for petitioner. With him on the brief was David A. Hytowitz, Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

Bruce L. Byerly, Portland, argued the cause for respondent. With him on the brief was Frank Moscato, Portland.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

### YOUNG, J.

Claimant seeks review of an order of the Workers' Compensation Board which reversed the referee's award of permanent total disability and awarded him 55 percent unscheduled disability of the low back. We review *de novo* and reverse.

Claimant is 62 years old, obese and has a tenth-grade education. He worked for 30 years as a cook before going to work for employer, where he was a janitor, a molder and, finally, a rinse/paint box operator. While working there, he suffered two compensable acute lumbar strains. The first occurred in June, 1979, resulting in a 10 percent unscheduled disability award. The second, the subject of this review, occurred in March, 1982, when claimant slipped and fell on a wet floor. He was awarded 25 percent unscheduled disability as a result of that injury. He requested a hearing. The referee found him permanently and totally disabled both on the basis of the medical evidence alone and under the "odd-lot" doctrine. The Board, after finding that claimant is capable of some work, found that he had failed to prove that he had made reasonable efforts to find work and that he had unreasonably failed to mitigate his injury by losing weight. The Board reversed the referee but increased the unscheduled disability award to 55 percent.

■ Claimant was examined by several physicians. They all basically agree that (1) he is obese; (2) he suffers from chronic recurrent strain of the lumbar muscles and ligaments, superimposed on moderately severe degenerative disc disease at L5-S1 and mild degenerative disc disease at L4-L5; (3) as a result, his physical capacities are limited, although there is some disagreement as to the extent of the limitation[1]; and (4) he is situationally depressed. Claimant testified that many

---

[1] Dr. Maskell, claimant's treating physician, and Dr. Wade, a consulting physician, reported limitations, including no bending, squatting, crawling, climbing, twisting, working at heights above shoulder level and no lifting or carrying over 10 pounds. Orthopaedic Consultants, on the other hand, concluded that claimant could return to a light category of occupation with no lifting over 25 pounds, no repetitive lifting over 10 pounds and no repetitive bending, stooping or twisting. When medical evidence is divided, we tend to give greater weight to the conclusions of a treating physician, in the absence of persuasive reasons not to do so. *See Taylor v. SAIF,* 75 Or App 583, 585, 706 P2d 1023 (1985); *Weiland v. SAIF,* 64 Or App 810, 814, 669 P2d 1163 (1983).

activities, including lifting, bending, standing, sitting, stooping, crawling, walking, going up or down hills and stairs and pushing and pulling are either impossible or exacerbate his chronic pain and the greater his activity, the more frequent his pain. The referee expressly found him to be "a completely credible and reliable witness."[2]

In December, 1982, a Callahan Center evaluation team concluded that he demonstrated the aptitude, ability and physical tolerances for his return-to-work objectives: bench assembly, delicatessen cutting and slicing and salad making. He was transferred to the Field Services Division Job Club for direct employment assistance.

Claimant testified that, before May, 1983, he unsuccessfully applied for salad preparation or other light duty work at eight or ten restaurants. In early May, the Field Services Division closed claimant's file at his request, because he did not know if he would ever work again. Dr. Rollins, a rehabilitation specialist with over 26 years' experience, testified that, in his opinion, claimant would not be able to sell his services or work regularly in a suitable or gainful occupation and that he was not a candidate for retraining or rehabilitation. He based his opinion on a combination of factors: (1) claimant's physical limitations; (2) his lack of skills transferable to less physically demanding work; (3) his age and lack of formal education; (4) the reluctance of employers to hire persons with back injuries; and (5) his lack of capacity to adapt to other work areas. He also testified that, although claimant would rather be working, he is not as highly motivated as he may have been three or four years ago when his prospects for work seemed better. Claimant testified that he would accept retraining if he found something that he could do.

It is generally agreed that his back problems are exacerbated to some extent by his weight and that weight loss should improve his back condition. Although he lost twenty pounds during a stay at the Callahan Center after his first injury, he did not lose any weight in the Center's program

---

[2] We defer to the referee's express finding of credibility in this case. *See Bush v. SAIF,* 68 Or App 230, 233, 680 P2d 1010 (1984); *Williams v. SAIF,* 66 Or App 420, 422, 674 P2d 78, *rev den* 296 Or 712 (1984).

after his second injury. His weight has remained fairly stable for a number of years and did not prevent him from working before his second injury.

ORS 656.206(1)(a) provides:

> " 'Permanent total disability' means the loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which permanently incapacitates the worker from regularly performing work at a gainful and suitable occupation. As used in this section, a suitable occupation is one which the worker has the ability and the training or experience to perform, or an occupation which the worker is able to perform after rehabilitation."

There are two types of permanent total disability: one arising entirely from medical or physical incapacity and the other from a less-than-total physical incapacity plus nonmedical conditions. *Clark v. Boise Cascade Corp.*, 72 Or App 397, 399, 695 P2d 967 (1985); *Wilson v. Weyerhaeuser*, 30 Or App 403, 409, 567 P2d 567 (1977). Claimant has the burden of proving that he is willing to seek regular employment and has made reasonable efforts to obtain such employment. ORS 656.203(6); *Clark v. Boise Cascade Corp.*, supra, 72 Or App at 399. An award of permanent total disability is not appropriate if the employer proves that a claimant failed to mitigate the extent of his disability by unreasonably failing to follow medical advice that he lose weight. *Nelson v. EBI Companies*, 296 Or 246, 252, 674 P2d 596 (1984); *Christenson v. Argonaut Ins. Co.*, 72 Or App 110, 113, 694 P2d 1017, *rev den* 299 Or 37 (1985).

■ Although we tend to agree with the Board that the medical evidence alone does not show that claimant is totally disabled, we are persuaded, as was the referee, by Rollins' testimony that claimant falls within the odd-lot category, because of his age, physical limitations, below average intelligence, lack of education, limited work experience, lack of transferable skills and lack of adaptability.[3] Thus, he is

---

[3] Employer argues that Rollins' testimony is entitled to little or no weight for myriad reasons. We disagree. Rollins is a rehabilitation specialist with over 26 years' experience in vocational rehabilitation. He reviewed the Callahan Center files, checked their test results for accuracy and conducted several additional tests, which included observing claimant while he performed various tasks. He then took the test data and his profile of claimant and entered them into a computer which encompasses the job bank for the states of Oregon and Washington and the Dictionary of Occupational Titles. The computer summarized the variables to determine if there was suitable work.

entitled to an award of permanent total disability, unless the Board correctly found that he had failed to make reasonable efforts to find work or that he had failed to mitigate the extent of his injury.

■ ORS 656.206(3) provides:

"The worker has the burden of proving permanent total disability status and must establish that the worker is willing to seek regular gainful employment and that the worker has made reasonable efforts to obtain such employment."

We think that claimant has met those requirements. After his return-to-work objectives were identified, he unsuccessfully applied at eight or ten restaurants, although Maskell had previously told him that he was probably unemployable. Claimant then left the Job Club, because he did not believe that he would ever work again.[4] Under the circumstances, claimant has met his burden of proving that he made reasonable efforts to find work. *See Butcher v. SAIF,* 45 Or App 313, 317, 608 P2d 575 (1980); *compare Fitzpatrick v. Freightliner,* 62 Or App 762, 662 P2d 8, *rev den* 295 Or 297 (1983), *with Home Insurance Co. v. Hall,* 60 Or App 750, 654 P2d 1167 (1982), *rev den* 294 Or 536 (1983).[5]

■ We turn to whether employer proved that claimant failed to mitigate the extent of his disability by unreasonably failing to follow medical advice that he lose weight. Although this is a close question, we conclude that employer did not meet its burden of proof. It is true that several doctors told claimant to lose weight and stated that weight loss would

---

[4] It is apparent from the record that claimant's "broken body has caused a broken spirit." *See Fitzpatrick v. Freightliner Corp., supra,* 62 Or App at 766; *Seaberry v. SAIF,* 19 Or App 676, 683, 528 P2d 1103 (1974). After his first injury, he participated in a rehabilitation program at the Callahan Center. The staff reports indicate that he was highly motivated to get better and return to work. His doctors released him to return to work, with some misgivings on their part, because he felt so strongly about returning to work that he would never feel right about doing something else until he tried. As noted above, after his last injury he tried to find new employment after being told that it was probably futile. Soon after claimant left the Job Club, Rollins also told claimant that he was unemployable.

[5] Employer cites *Waler v. SAIF,* 42 Or App 133, 600 P2d 442 (1979), in support of the Board's finding that claimant did not meet the requirements of ORS 656.206(3). *Waler* is distinguishable. The claimant there made *no* attempt to find work; here, claimant applied for exactly the kind of work identified in his return to work objectives. Moreover, there is no indication in *Waler* that the claimant had been told that she would probably never work again.

lessen his back pain. It is also true that he lost 20 pounds after his first injury while attending the Callahan Center's weight loss classes and that the weight loss and exercises increased his endurance and lessened his back pain. *See Nelson v. EBI Companies,* 64 Or App 16, 23, 666 P2d 1360 (1983), *aff'd* 296 Or 246, 674 P2d 596 (1984). On the other hand, the record does not indicate that claimant was given a specific weight loss program which he failed to follow for reasons within his control. *See Christenson v. Argonaut Ins. Co., supra.* Although he attended weight loss classes at the Callahan Center, he failed to lose any weight. Wade stated that one of the reasons claimant has not lost weight is that he is depressed about his present status. On this skimpy and equivocal record, we cannot say that employer carried its burden of proving that he unreasonably failed to follow medical advice.

Reversed and remanded with instructions to reinstate the referee's order.