Argued and submitted June 24, 1985, reversed; referee's order reinstated April 16, 1986

In the Matter of the Compensation of
Francis G. Shaw, Claimant.

SHAW,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION et al,
*Respondents.*

(WCB 83-04250; CA A34384)

717 P2d 1197

Rick W. Roll, Tillamook, filed the brief for petitioner.

Darrell E. Bewley, Assistant Attorney General, Salem, argued the cause for respondent State Accident Insurance Fund Corporation. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

No appearance for respondent Molded Fibreglass.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

Claimant petitions for judicial review of an order of the Workers' Compensation Board reversing the referee's award of permanent total disability and finding claimant not entitled to an increased disability award. On *de novo* review, we reverse the Board and reinstate the referee's order.

Claimant injured his right knee by tripping over a hose at work on September 3, 1977. He has since undergone five operations on the knee and has received awards totalling 112.5 degrees for scheduled disability equal to 75 percent loss of the right leg. Weakness in the knee causes him to fall and restricts his standing, sitting, walking and driving. He is unable to crawl, squat or kneel. He testified that knee pain forces him to lie down at least once a day for several hours. Claimant's treating physician, Dr. Hazel, stated on August 30, 1979:

> "I think he has probably worked as hard at rehabilitating the knee as anyone that I have cared for. At the present time I think * * * that he will probably never return to his usual vigorous occupation of working in a fiberglass molding plant. He is in need of rehabilitation."

Claimant also has preexisting back and neck problems caused by two automobile accidents and a high school football injury. He testified to back discomfort requiring him to lie down approximately twice a week, "snapping and popping" in his neck and numbness in his fingers. The Vocational Rehabilitation Division's supervising counselor, Scott, stated on July 24, 1982, that "claimant has extremely poor motor and finger skills to the extent that they suggest he will fail at any task which requires either fine manipulation or quick repetitive movements."

The probability of successful rehabilitation is lessened by claimant's lack of learning skills. He is unable to retain textbook information. A vocational evaluation on March 10, 1982, placed his reading, spelling and arithmetic skills at grade levels 5.1, 3.3 and 5.5, respectively. He suffers from dyslexia and organic brain dysfunction in the left hemisphere, where many verbal abilities are centered. He has serious memory deficits and difficulty reading words more than four letters long. On March 16, 1981, Barnes, of the

Counseling Center at Chemeketa Community College, administered a series of tests on referral from Scott. She reported: "Because of the weakness of both visual and auditory memory skills, learning to read or do anything else is going to be slow and difficult."

Requirements for stooping and kneeling prevented claimant from returning to his previous occupation of making fiberglass walls, and his skills at that occupation are nontransferable, because of the knee injury. In early 1982, he began vocational rehabilitation and attempted auto painting and drafting courses. His physical limitations prevented completion of the auto painting course; his mental and learning abilities were insufficient for the drafting course.

Dr. Castles, a psychologist, informed Scott on April 30, 1981, that claimant was a poor candidate for vocational rehabilitation, stating, "He should probably be awarded social security and allowed to go on with his life at the marginal level he appears to maintain. He is now doubly handicapped—intellectually and physically and his physical abilities were all he really had going for him." Scott concluded on July 24, 1982, that "when Mr. Shaw had both his body and his visual abilities whole, he was able to function. However, when his body was injured, he moved from being a marginal worker to a disabled worker."

The referee awarded permanent total disability. The Board reversed, holding that claimant is not entitled to permanent total disability because he failed to satisfy the work search requirements of ORS 656.206(3) and that he is not entitled to an increase in the award of scheduled disability for his right leg.

A claimant who is not totally incapacitated can be permanently and totally disabled because of a combination of medical and nonmedical factors which renders him unable to work at a gainful and suitable occupation. *Clark v. Boise Cascade Corp.,* 72 Or App 397, 399, 695 P2d 967 (1985). Nonmedical considerations include age, education, adaptability to nonphysical labor, mental capacity, emotional condition and the state of the labor market. *Welch v. Banister Pipeline,* 70 Or App 699, 701, 690 P2d 1080 (1984), *rev den* 298 Or 470 (1985). A claimant is statutorily required to make reasonable efforts to obtain regular gainful employment, ORS

656.206(3),[1] unless the attempt would be futile. *Welch v. Banister Pipeline, supra,* 70 Or App at 701.

■ Although claimant, at age 39, is relatively young, the evidence as a whole leads to the conclusion that a job search would be futile. He was educated through the ninth grade but tests show his learning to be at about the fourth or fifth grade level. His work experience is limited to manual labor occupations which are now unsuitable because of his physical limitations. Added to his lack of education and the fact that his work experience is limited to manual labor, claimant's lack of mental capacity persuades us that he is permanently totally disabled. His organic brain dysfunction makes it very difficult for him to learn and stands as a formidable barrier to his adaptation to nonphysical labor. The psychological and vocational testing evidence supports the conclusion that his inability to perform most physical labor has foreclosed any realistic possibility of employment.[2]

■ Given claimant's physical and mental limitations, his unsuccessful attempts at vocational rehabilitation constitute a reasonable attempt to obtain regular gainful employment. *See Wiley v. SAIF,* 77 Or App 486, 713 P2d 677 (1986); *Welch v. Banister Pipeline, supra.* He has demonstrated a willingness to work but has been unable to become successfully retrained. "[A] worker's physical impairment need not be complete, *i.e.,* the worker need not be a 'basket case,' if the injury has left him or her incapable of performing any services for which there exists a reasonably stable market." *Wilson v. Weyerhaeuser,* 30 Or App 403, 409, 567 P2d 567 (1977). As in *Wilson,* the evidence here demonstrates that the ability to perform physical labor has always been claimant's only

---

[1] ORS 656.206(3) provides:

"The worker has the burden of proving permanent total disability status and must establish that the worker is willing to seek regular gainful employment and that the worker has made reasonable efforts to obtain such employment."

[2] Claimant's award can be adjusted if, through vocational rehabilitation, on-the-job training, or otherwise, he is no longer permanently incapacitated from regularly performing work at a gainful and suitable occupation. ORS 656.278; *Lohr v. SAIF,* 48 Or App 979, 985, 618 P2d 468 (1980). There is some evidence that claimant's best chance at rehabilitation would be through repetitive, on-the-job instruction. However, he is not *presently* employable in the general labor market, and we must decide whether claimant is permanently totally disabled on circumstances existing at the time of the decision. *Gettman v. SAIF,* 289 Or 609, 614, 616 P2d 473 (1980); *Clark v. Boise Cascade Corp., supra,* 72 Or App at 401.

employable asset. Without it, his services have little or no marketable value.[3]

Reversed; referee's order reinstated.

---

[3] Respondents point to claimant's ability to sit or stand for two hours at a time and his minimal abilities to lift, carry and bend, as suggesting that he is not totally disabled. However, they have not suggested any type of work that he would be able to perform successfully, and we are convinced that he would be unable to sell his services on a regular basis in a hypothetically normal labor market.