Argued and submitted June 10, remanded August 25,
reconsideration denied November 6,
petition for review denied November 20, 1980 (290 Or 157)

In the Matter of the Compensation of
SHAW,
*Petitioner - Cross-Respondent,*
*v.*
PORTLAND LAUNDRY/DRY CLEANING et al,
*Respondents - Cross-Petitioners.*
(WCB No. 79-1310, CA 16210)
615 P2d 1134

William J. Scheiderich, Portland, argued the cause
for petitioner - cross-respondent. On the brief were

Robert K. Udziela, Peter O. Hansen and Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland.

Margaret H. Leek Leiberan, Portland, argued the cause for respondents - cross-petitioners. With her on the brief was Lang, Klein, Wolf, Smith, Griffith & Hallmark, Portland.

Before Schwab, Chief Judge, and Thornton and Richardson, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

The questions in this workers' compensation case are whether claimant is permanently and totally disabled and, if not, whether claimant's partial disability should be compensated by a scheduled or an unscheduled award. The Board found an unscheduled partial disability.

### I

■ We agree with the Workers' Compensation Board that, on the present record, claimant is not permanently and totally disabled. We do not, however, agree with all of that Board's analysis. The Board found that claimant "has sought no employment or retraining assistance." That is not an accurate characterization of the record unless the Board chose to disbelieve completely, without expressly so stating, both claimant's testimony and several exhibits.

Instead, our de novo findings are:

Claimant's permanent disability is variously described in the medical evidence as phlebitis and/or thrombophlebitis and/or varicose veins. This disability significantly impairs claimant's ability to lift, stand, walk and even to sit continuously. However, all of the doctors who treated or examined claimant opined that she could return to part-time work or "light" full-time work, especially if she obtained vocational rehabilitation. The medical evidence establishes significant, but less than total, disability.

Between the onset of claimant's disability in October, 1977, and the hearing before the referee in June, 1979, claimant: (1) attempted housekeeping for hire for relatives; (2) attempted babysitting for hire, apparently also for relatives; (3) applied for two jobs; and (4) made some inquiry about a phone solicitation job.[1] Considering claimant's circumstances, these

[1] Claimant also testified somewhat obliquely about contacts she had with the Employment Division and Vocational Rehabilitation Division, but we find the record too cryptic to be the basis of any finding about the nature, quantity or quality of such contacts.

efforts to find employment are on the borderline of reasonableness.[2]

At the hearing before the referee, the employer for whom claimant was working when she became disabled stated that a seamstress position was available in his plant and in effect offered the job to claimant. Claimant had prior experience as a seamstress. She never clearly answered, we find, questions about whether she thought she was able to do that work. There is some indication in the medical evidence that working as a seamstress may involve more sitting than claimant is capable of doing and may involve more manipulation of sewing machine controls with her feet and knees than claimant is capable of doing. Like so many other parts of this record, however, the evidence about claimant's ability to work as a seamstress is inconclusive.

In sum, the medical evidence does not show total disability; claimant's job search was minimal and may have been less than reasonable, ORS 656.206(3), n 2, *supra.;* and claimant was offered a job that she may or may not be capable of doing. Under these circumstances, we conclude that claimant's failure at least to attempt working as a seamstress is the most telling fact that forecloses a finding of total disability.

## II

The problem of whether claimant's partial disability is scheduled or unscheduled illustrates how complex the workers' compensation system has become.

All of the medical evidence seems to suggest that claimant's phlebitis and/or thrombophlebitis and/or varicose veins involve primarily or exclusively her legs. Relying on this, the employer contends

---

[2] In order to establish permanent total disability, ORS 656.206(3) provides that claimant "has the burden of proving" that she "has made *reasonable* efforts" to obtain "regular gainful employment." (Emphasis supplied.)

that claimant is entitled to only a scheduled award pursuant to ORS 656.214(2)(c). The Board, without explanation, granted claimant an unscheduled award.

Claimant's argument in favor of an un-scheduled award is a mystery. It may have been developed in closing arguments before the referee, but those arguments were not transcribed pursuant to a stipulation of the parties. It may have been developed in claimant's brief before the Board, but no such brief is in the record. Claimant's argument for an unscheduled award was *not* developed in her brief filed with this court. At oral argument in this court claimant contended that *Russell v. SAIF,* 281 Or 353, 574 P2d 653 (1978), is support for the Board's unscheduled award. We do not read *Russell* as applying here.

■■ We conclude that intelligent resolution of this issue requires that we remand for further proceedings. This is warranted, first, because while this case was pending in the review process, the ground rules for distinguishing scheduled from unscheduled injuries were refined by the Supreme Court in *Woodman v. Georgia-Pacific Corp.,* 289 Or 551, 614 P2d 1162 (1980). Even the refined rules may not be completely sufficient to dispose of this case, but they indicate: (1) if claimant's disability is a general vascular problem, it should be compensated with an unscheduled award, even if it happens to manifest itself primarily in her legs; but (2) if claimant's vascular problem is limited to her legs, it should be compensated with a scheduled award, unless it also has secondary consequences, beyond the scheduled loss, that are compensable under the *Woodman* rules.

The second reason for a remand is that there is a factual void. The doctors were not asked—and did not volunteer—whether they thought claimant's condition was a general circulatory or vascular problem or, instead, whether they thought it affected only the circulation in and veins of her legs. The absence of this

[1045]

information is, of course, understandable because the record was developed without the benefit of *Woodman.* But that absence prevents any meaningful application of *Woodman* by us at this time. For these reasons we remand to the Board with instructions to remand to the referee for further proceedings consistent with this opinion.

Remanded.