Argued and submitted December 17, 1980,
affirmed as modified February 17, 1981

In the Matter of the Compensation of
Olive H. Morris, Claimant.

MORRIS,
*Petitioner,*

*v.*

DENNY'S RESTAURANT et al
*Respondents.*

(WCB No. 78-6247, CA 18174)

623 P2d 1118

Robert K. Udziela, Portland, argued the cause for petitioner. With him on the brief was Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland.

Margaret H. Leek Leiberan, Portland, argued the cause for respondents. With her on the brief was Lang, Klein, Wolf, Smith, Griffith & Hallmark, Portland.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

Seeking an award of permanent total disability, claimant, a 59-year-old woman, appeals from the order of the Workers' Compensation Board awarding her 75 percent permanent unscheduled disability.

Claimant first injured her back while working as a fry cook in March, 1973. After returning to work, she reinjured her back in April, 1973. After the initial diagnosis of lumbosacral strain in May, 1973, two other doctors recommended a myelogram, which revealed nerve root irritation and a protruding lumbosacral disc. As a result of these injuries, claimant was awarded 20 percent unscheduled permanent partial disability in June, 1974. In March, 1975, by stipulated order her disability award was increased to 50 percent.

In April, 1975, after a period of treatment and upon the recommendation of Orthopaedic Consultants, claimant changed jobs and began work as a pharmaceutical clerk. In October, 1976, claimant was taken off work by her doctor due to her deteriorating back condition. Surgery, which had been recommended by one doctor in 1973 and another in 1976, was finally performed in March, 1977. Although the operation caused some slight improvement in claimant's back, it also resulted in fecal and urinary incontinence and a significant noticeable drop foot that now drags when claimant walks. Throughout this entire period claimant experienced pain when sitting, lifting, twisting, standing or walking.

In 1978, a doctor noted that while claimant was only 57 years old, she had an apparent physical age of 70. Several doctors noted that claimant did not appear motivated to find further work, although she was physically capable of light to sedentary tasks. After a hearing in October, 1979, to determine the extent of claimant's permanent disability, the referee increased the previous award of 50 percent to 75 percent unscheduled permanent disability. The referee did not grant total disability, because claimant had not looked for work for two years nor sought vocational rehabilitation. The Board affirmed the referee.

One doctor, who reported that claimant basically saw herself as retired, later expanded on his assessment of low motivation:

"I think it is important to point out that the term 'motivation' may or may not have negative connotations, depending upon the situation with the individual. From a practical standpoint, there are factors beyond the medical issue that often determine whether or not an individual does return to some form of occupation. Seeing individuals with similar problems who are working makes it difficult to find a word that describes what is going on in any one particular individual's case.

"We do not criticize all of our patients as having poor motivation if they decide not to return to work. Perhaps a better word to use might be desire, interest, availability of work, educational limitations, general employability, physical appearance, financial compensation, and many other factors."

This doctor referred claimant to a psychiatrist for a "psychologic recheck evaluation." The report stated in part:

"Olive Morris is a 58 year old woman who returned for followup evaluation, having been a patient in the Pain Center from 4-23-79 to 5-11-79. While in the program, Mrs. Morris made slow, but fairly steady progress. In many ways, she has maintained most of these gains, indicates that she continues to exericse [sic] four times per day, however, she continues to view herself as having rather severe pain problem, and she is quite limited with respect to sitting tolerance, standing tolerance, walking tolerance and so-forth. She indicates that she must lie down about two hours each day. However, she maintains a fairly active life with craft kits, gardening and numerous visits from friends and relatives.

"The patient's primary problem, would appear, as the same as the one which she faced at the time of admission to the program. Basically, she does not see herself as capable of return [sic] to work in any area, and she is understandably quite anxious about her financial future. *It has not been felt that return to work was feasible in consideration of the numerous factors that work here, including her age, her apparent age which is much older than her chronologic age, and her generally defeated attitude.*
" * * * * * *

"PROGNOSIS: Prognosis for continued conservative management of her pain problem is felt to be good, unless she

experiences real pressure toward a return to work. *Prognosis for return to work is extremely guarded.*
" * * * * *

"RECOMMENDATIONS: The patient is discharged from the Pain Center Program, to return should further significant difficulties develop. Use of analgesic medications of the prescription variety is contra-indicated. It is not felt that further therapy will be of benefit to her. *She would not appear to be a candidate for vocational rehabilitation effort.*" (Emphasis supplied.)

▪ Permanent total disability may be caused by less than total physical incapacity plus nonmedical conditions including "age, training, aptitude, adaptability to nonphysical labor, mental capacity, emotional condition, as well as conditions of the labor market." *Wilson v. Weyerhaeuser,* 30 Or App 403, 409, 567 P2d 567 (1977). As we stated in *Wilson:*

"The burden of establishing permanent total disability is upon the claimant and nothing in the odd-lot doctrine serves to shift it. * * * There is no formulaic method of carrying this burden. Permanent total disability may be established by any evidence which demonstrates to the satisfaction of the trier of fact, that as a consequence of a compensable injury, the claimant has been rendered unable to sell his services on a regular basis in a hypothetically normal labor market." 30 Or App at 409.
" * * * * *

"A broken body can cause a broken spirit, *Seaberry v. SAIF,* 19 Or App 676, 683, 528 P2d 1103 (1974), and the point on the spectrum between psychopathological and attitudinal breakage at which each case falls is a question of degree which the fact finder must infer from all the evidence. That evidence should be considered in all its variety, free from the limiting semantical framework of 'motivation.' The use of the term should be abandoned except to convey its specific meaning." 30 Or App at 412.

▪ Claimant here entered the labor market at age 42 with no prior job experience other than that of a housewife. She has a ninth grade education. She worked as a cook for ten years until she was injured and thereafter for a time as a counter clerk until her deteriorating condition necessitated ending her employment. Surgery left claimant significantly more impaired physically and with the additional burden of considerable anxiety and depression resulting

from the injury and her impaired state. Claimant also is handicapped by an apparent age of someone well past the ordinary span of working years. In view of claimant's guarded prognosis for return to work and the psychiatrist's conclusion that she is not a candidate for vocational rehabilitation, her failure to seek employment or vocational rehabilitation does not militate against her claim, where it would be futile for claimant to attempt to be employed. *Butcher v. SAIF,* 45 Or App 313, 318, 608 P2d 575 (1980).

We conclude from our review of the evidence that as a consequence of the compensable injury, claimant has been rendered unable to sell her services on a regular basis in the labor market. *Wilson v. Weyerhaeuser, supra,* 30 Or App at 409. Claimant is entitled to permanent total disability.

Affirmed as modified.