In the Matter of the Compensation of
Maxine E. Shaw, Claimant.

## SHAW,
*Petitioner,*

*v.*

## PORTLAND LAUNDRY/DRY CLEANING et al,
*Respondents.*

(WCB Nos. 79-01310, 79-010446; CA A23552)

656 P2d 950

Robert K. Udziela, Portland, argued the cause for petitioner. With him on the brief was Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

Emil R. Berg, Portland, argued the cause for respondents. With him on the brief was Wolf, Griffith, Bittner, Abbott & Roberts, Portland.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

Claimant appeals an order of the Workers' Compensation Board affirming the referee's determination that claimant has no permanent disability resulting from her compensable disease. We also affirm.

Claimant suffered a compensable occupational disease in the form of phlebitis in both legs, claimed to have commenced on October 31, 1977. The claim was accepted, and on October 25, 1978, by determination order, claimant was awarded temporary total disability from October 31, 1977, through September 25, 1978, less time worked, but no compensation for permanent disability. At her request, a hearing was held on June 19, 1979, resulting in a finding by the hearing referee that she was permanently and totally disabled. Employer appealed, and the Board reduced claimant's disability to 70 percent unscheduled permanent partial disability. Claimant sought judicial review, claiming permanent total disability, and on August 25, 1980, this court found her disability to be less than total but remanded the claim to the Board to determine whether her partial disability was scheduled or unscheduled. *Shaw v. Portland Laundry/Dry Cleaning,* 47 Or App 1041, 615 P2d 1134 (1980). In an order of remand to the Hearings Division, the Board directed:

> "* * * The referee shall determine, by the taking of additional evidence, whether the claimant's condition is a general circulatory or vascular problem or whether it affects only the circulation in the veins of her legs. The referee further shall determine if the claimant is entitled to an award of scheduled disability or an award of unscheduled disability."

In the meantime, on July 24, 1979, claimant filed a claim that her hiatal "[h]ernia [was] materially and permanently worsened by inactivity and weight gain due to industrial injury." She requested a hearing, which was commenced on May 17, 1980, and was continued. The continued claim for hiatal hernia and the remanded claim for phlebitis were consolidated for hearing. At the hearing on June 9, 1981, the referee heard new evidence, including testimony of the claimant and a second deposition of her treating physician, Dr. Richard Ellerby. The referee affirmed the denial of claimant's hernia claim and affirmed

the determination order of October 25, 1978, on her phlebitis claim and, therefore, awarded claimant no benefits for permanent partial disability. The Board's order affirming the referee is before us on appeal.

Claimant contends that our prior opinion established that she was permanently disabled as "the law of the case" and that the Board was limited on remand to determining whether the disability was scheduled or unscheduled. Alternatively, she contends that the medical evidence establishes that she is permanently disabled.

■ In her first assignment, claimant contends that the referee and the Board were bound on remand by our prior "determination" that she is entitled to an award of permanent partial disability. It overstates our first opinion to say that we *determined* that claimant suffered a permanent disability. The only questions before us were whether claimant's disability was total or partial and scheduled or unscheduled. We merely accepted the Board's conclusion, unchallenged at that time, that the disability was permanent. More important, even if our prior opinion had been intended to establish the existence of a permanent disability, it would have represented our determination of claimant's condition only *at that time.* ORS 656.278 grants the Board continuing jurisdiction to modify or terminate former awards "if in its opinion such action is justified." The Supreme Court has interpreted that statute as "intended to prevent the normal operation of the doctrine of *res judicata*" in workers' compensation cases. *Holmes v. State Ind. Acc. Com.,* 227 Or 562, 574-75, 362 P2d 371, 363 P2d 563 (1961). Claimant has not referred us to any authority that would require a contrary conclusion here.

We did not determine the extent of claimant's disability in our earlier decision, and we do not have, in the record before us, the evidence presented to the referee in the June 19, 1979, hearing and on which he based his finding that claimant was permanently and totally disabled. From the opinion and order, it appears that that finding was based on testimony of the claimant and other lay witnesses. The opinion states:

"[A]ll of the physicians who have examined her are of the opinion that she could engage in light work which does not require continuous sitting or standing."

The Board's order on review, which reduced claimant's award to benefits for 70 percent unscheduled permanent partial disability, reviewed the medical evidence and relied on the deposition testimony of Dr. Ellerby "that claimant did now have some permanent limitations from her phlebitis."[1]

The purpose of the remand was to determine whether claimant's vascular disease was general or limited to her legs. Dr. Ellerby, who had continued to treat claimant, testified that her disease was limited to her legs. He further testified that she was suffering from varicose veins, that her varicose veins preexisted the thrombophlebitis and were not caused by her work conditions and that, although her work conditions had caused the thrombophlebitis, which had aggravated the varicose veins and resulted in temporary total disability, the thrombophlebitis had been medically stationary since about July, 1979, and in fact, was no longer present. He testified that her physical limitations were caused by a preexisting varicose vein condition and that those limitations could be partially alleviated if she would exercise and lose weight.

■ In her second assignment, claimant contends that the medical evidence establishes a permanent disability. We disagree. The referee summarized the evidence as follows:

"Dr. Ellerby attributes all of her symptoms to varicose veins. Dr. Hampton explained: 'The etiology of the patient's condition is that she was born with poor veins and she has had jobs in which she stands or sits for long periods.'

"Dr. Ellerby stated claimant's thrombophlebitis has been medically stationary since approximately July, 1979; but her varicosities pre-existed her injury, and insofar as her thrombophlebitis is concerned, it no longer exists."

From that, the referee concluded that claimant suffers no permanent disability. Our review of Dr. Ellerby's testimony confirms the referee's conclusion. He was claimant's

---

[1] We were not provided with Dr. Ellerby's testimony from the original hearing on this appeal. Our understanding of his earlier testimony is based on references to it at his May 18, 1981, deposition, especially claimant's attorney's summarization of his earlier testimony.

treating internist, and apparently the physician most familiar with her condition at the time of the remand hearing. Implicit in ORS 656.278 is the common sense understanding that the course of a disease or injury may change over a period of time and that a claimant's disability will vary accordingly. For that reason, in this case the more recent medical evidence carries greater weight in determining disability, and, as the Board has done, we rely on Dr. Ellerby's testimony of May 18, 1981, which establishes that claimant suffers no permanent disability from her compensable disease.

Affirmed.