Argued and submitted March 18, reversed, referee's order reinstated May 11, 1983

In the Matter of the Compensation of
Norman G. Munger, Claimant.
MUNGER,
*Petitioner,*
*v.*
STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(81-05855; A26056)

662 P2d 808

Alan M. Scott, Portland, argued the cause for petitioner. With him on the brief were John M. Pitcher, and Galton, Popick & Scott, Portland.

Donna M. Parton, Associate Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause for respondent. With her on the brief was Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Claimant appeals from an order of the Workers' Compensation Board reversing the referee's award of permanent total disability and awarding him 75 percent permanent partial disability. We reverse and reinstate the referee's order.

Claimant is in his mid-50s, has an eighth- to tenth-grade educational level and is experienced as a truck driver and laborer. He injured his back at work, suffering a herniated intervertebral disc. He has had two lumbo-sacral surgeries, the last of which left him with a weakness in the right leg and also an inability to urinate that a urologist diagnosed as a neurogenic dysfunction of the bladder of the flaccid type secondary to disc disease and back injury. He stated that the impairment of the bladder function was permanent and irreversible, requiring self-catheterization to urinate. The treating physician imposed work limitations of no lifting greater than 35 pounds; bending, stooping and crawling were not recommended. Claimant also has chronic paranoia, with a profound thought disorder.

Claimant had been employed many years in a company where he was supervised by his brother-in-law and had acquired seniority with the firm. He perceived the job to be safe, secure and non-threatening. The work involved loading and unloading framing lumber for construction and constant bending, lifting and repetitive handling of heavy loads. Due to his disabilities he was unable to continue to work for that employer.

The referee stated that no suitable or gainful work had been suggested for claimant and that realistically there was no present place for him to work with his skills and training that would have facilities that would enable him to catheterize himself during the day. The catheterization process, in order to be performed safely in an employment situation and reduce the risk of infection, requires a sterile shelf or table in an employer's restroom. It has to be performed approximately three times during each normal eight-hour work day and takes 15 minutes each time.

The board concluded that claimant was not permanently and totally disabled. It did not believe the catheterization problem was insurmountable and stated that claimant

could adjust to other working situations and that his motivation was suspect.

Claimant's bladder problem developed in connection with the second surgery. Before the operation, Dr. Vincent Glauden, a clinical psychologist, reported

"[A]pparently this man has been able to work despite a chronic paranoid schizophrenic condition because his employer has provided a vocational role which protected the client. Now in the face of physical disability and the possibility of some type of re-adjusted vocational role, the patient's psychiatric disorder is a severely limiting condition. It would appear that unless he can return to a highly protected job, the combination of physical and psychiatric disability makes him a candidate for permanent and total disability. * * *In any event, I do not believe that he has any capacity to adapt to a new vocational situation."

Claimant was rereferred to Ingram and Associates following the second surgery. Their report reads

"[U]nfortunately, his physical limitations are even greater [now] than in 1980, when we gave the opinion that Mr. Munger was not feasible for vocational rehabilitation. Physical limitations coupled with severe and chronic psychiatric conditions (paranoid schizophrenia) were the basis of this opinion. * * *

"* * * * *

"We continue to believe that based upon Mr. Munger's work history of 20+ years with the same employer (a relative who apparently accommodated client's idiosyncracies), his age, 54, physical impairments and limits (20 lbs. occasionally, ambulation problems, incontinence - he must catherize [sic] himself each time), eight grade education, severe paranoid schizophrenia, he is not feasible for vocational rehabilitation. We regret we are not able to assist this sincere and interesting claimant."

Wilson Walker, a vocational consultant, stated that suitable restroom facilities for the catheterization process that claimant requires are difficult to find. While there might be restroom facilities with relatively private stalls and necessary clean tables or shelves available for catheterization on a single occasion, none would be suitable for catheterization three or four times a day, five days a week. It was also his opinion that

claimant did not have transferrable skills. At the hearing before the referee Walker responded to questions as follows:

"Q. Now, taking those jobs and adding to — I guess it really isn't a hypothetical — adding to what the testimony and the review of the exhibits — if you add to that the Claimant's testimony and documented by the medical reports that he needs to have a sterile environment in which to catheterize himself, the catheterization taking approximately fifteen minutes and he has to do it in an eight-hour workday, it would probably have to be done in an eight-hour workday, at least twice, in your opinion could he engage in any of those jobs that you have just discussed?

"A. No, he could not.

"Q. Why not?

"A. I have looked into the different agencies before this hearing because I was concerned about this issue and they do not have a central place available that would allow him to sterilize this and take that time off from an eight-hour job.

"Q. Were you able to come up with any jobs based on your past experience and training and association with various employers, any job that this man could do at the present time with the various physical problems he has, including the need for the catheterization?

"A. No, I could not."

Given claimant's physical and mental conditions, it is unrealistic to say that claimant has a reasonable expectation of being able to sell his services to an employer. *Looper v. SAIF,* 56 Or App 437, 642 P2d 325 (1982); *Wilson v. Weyerhaeuser,* 30 Or App 403, 567 P2d 567 (1977). Under the circumstances it would have been futile for claimant, even with the best of motivation, to attempt to find employment. *Fitzpatrick v. Freightliner Corp.,* 62 Or App 762, 662 P2d 8 (1983); *Looper v. SAIF, supra; Morris v. Denney's,* 50 Or App 533, 623 P2d 1118, *remanded* 53 Or App 863, 633 P2d 827 (1981); *Butcher v. SAIF,* 45 Or App 313, 608 P2d 575 (1980); *see also Deaton v. SAIF,* 13 Or App 298, 509 P2d 1215 (1973). Claimant has sustained his burden of proof that he is permanently incapacitated from regularly performing work at a gainful and suitable occupation. ORS 656.206(1)(a).

Reversed; referee's order reinstated.