Argued and submitted May 25; resubmitted In Banc September 9,
affirmed October 12, 1983

In the Matter of the Compensation of
Della A. Laymon, Claimant.

## LAYMON,
*Petitioner,*

*v.*

## SAIF CORPORATION,
*Respondent.*

(80-10479; A26297)

670 P2d 211

Janet A. Metcalf, Portland, argued the cause for petitioner. With her on the brief were English & Metcalf, Larry K. Bruun and Welch, Bruun & Green, Portland.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause and filed the brief for respondent.

VAN HOOMISSEN, J.

NEWMAN, J., dissenting.

## VAN HOOMISSEN, J.

Claimant appeals from an order of the Workers' Compensation Board that reduced the referee's award of permanent total disability. We review *de novo*.

Claimant concedes that physical incapacity alone has not rendered her permanently and totally disabled. She is therefore required to show a reasonable effort to obtain employment before she is qualified for permanent total disability, ORS 656.206(3),[1] unless she can show that she is completely incapacitated and that it would be futile for her to attempt to become employed. *See Morris v. Denny's,* 50 Or App 533, 623 P2d 1118 (1981); *Butcher v. SAIF,* 45 Or App 313, 608 P2d 575 (1980). She contends that she is excused from the requirements of ORS 656.206(3).

The referee stated:

"Considering the medical and nonmedical factors, I conclude that there is no realistic likelihood based upon existing occupational abilities that claimant will be able to sell her services to any employer and therefore find she is permanently and totally disabled."

On review, the Board adopted the referee's findings of fact. It concluded, however:

"Although we agree with the Referee that claimant suffers from some serious social/vocational obstacles to employability, we do not believe that they are serious enough, when combined with her fairly moderate impairment (moderate enough that no physician believes that surgery is warranted) that permanent total disability is warranted. All of claimant's treatment for her injury has been conservative, and all of claimant's physicians agree that claimant is physically capable of doing some form of work. Claimant has been successfully retrained for an occupation suitable to her physical restrictions, but she has made minimal efforts to find work. We do not find the record to indicate that claimant is excused from the ORS 656.206(3) seek-work requirement by *Butcher v. SAIF,* 45 Or App 313 (1980)."

---

[1] ORS 656.206(3) provides:

"The worker has the burden of proving permanent worker is willing to seek regular gainful employment and that the worker has made reasonable efforts to obtain such employment."

Accordingly, after considering the referee's findings and all other relevant evidence, the Board reduced claimant's award to 70 percent permanent partial disability.

We agree with the Board that the record does not support the referee's finding that it would be futile for claimant to seek employment. All of the treatment for her injury has been conservative. All of her doctors agree that she is physically capable of doing some form of work. She was enrolled in a vocational rehabilitation program where she progressed satisfactorily and completed the course with high marks for speed and dexterity. The Field Services Division regarded her as rehabilitatable and able to make at least a part-time income. She is neither illiterate nor inarticulate. She is an avid reader. She would not be precluded from light work requiring simple written instructions or verbal communications. Her limited formal education is but one indicator of her ability. We have denied permanent total disability to claimants with limited formal education when that deficiency had little or no impact on other indicators of ability. *See Owen v. SAIF,* 33 Or App 385, 576 P2d 821 (1978); *Williams v. SAIF,* 20 Or App 208, 530 P2d 1255 (1975).

In a factually similar case, *Home Ins. Co. v. Hall,* 60 Or App 750, 654 P2d 1167 (1982), *rev den* 294 Or 536 (1983), the claimant was a 57-year-old woman with a tenth-grade education and no special job skills. She contended that her physical condition plus other non-medical factors rendered her permanently and totally disabled. We held that she had failed to prove that she was excused from the requirements of ORS 656.206(3). Likewise, the totality of the evidence here does not persuade us that claimant is excused from the requirements of ORS 656.206(3).

Affirmed.

**NEWMAN, J.,** dissenting.

I dissent and would reinstate the referee's award. After considering claimant's physical restrictions in conjunction with nonmedical factors, such as her age, limited education, limited employment experience and limited transferable skills, the referee concluded that

"* * * there is no realistic likelihood based upon existing occupational abilities that claimant will be able to sell her

services to any employer and therefore find she is permanently and totally disabled."

Claimant, 52 years old, slipped and fell while working as a cook, breaking her sacrum and right middle finger in July, 1978. The fractures healed with bed rest, but claimant developed headache and pain on the left side of her body and in her left shoulder and cervical area. She has seen numerous physicians and undergone extensive testing and evaluation. In July, 1979, at the insurer's request, she was seen by Dr. Pasquesi. At that time, she was receiving physical therapy three times a week and chiropractic treatments twice a week and was wearing a low back brace. Dr. Pasquesi noted that x-rays submitted for the examination revealed extensive degenerative changes in both the lower lumbar area and the cervical spine area. He also stated that claimant had chronic moderate to severe pain.

In August, 1979, claimant entered a vocational rehabilitation program. Because she was physically unable to return to her usual occupation as a cook, she received training as an electronic component assembler. Her treating orthopedist, Dr. Neufeld, reported that, although she was experiencing pain, she was progressing in the program and wished to continue it. During the training, claimant was allowed to sit or stand as necessary to alleviate the pain; however, she was still unable to attend classes on a full-time schedule because of her physical condition.

Myelography was performed in January, 1980, which revealed small defects at the cervical and lumbar levels, but surgery was not recommended. In February, 1980, claimant's treating chiropractor reported that the sitting required in her training classes "is a continuous aggravation which I believe is very damaging to her recovery rate."

In July, 1980, claimant was again seen by Dr. Pasquesi. He reported:

"Healed fracture of the sacrum with marked preexisting degenerative disease in the lumbar spine area with some radiculitis extending down the left leg without motor or sensory objective changes. Pre-existing degenerative changes in the cervical spine area with radiculitis down the left arm. The patient also has apparent peritendinitis in the region of

the left shoulder with restricted motion and continued discomfort."

He stated that claimant should be able to function in some type of employment not requiring that she sit continually for an eight-hour period and that she has limited motion in her left arm and probably could not effectively use the arm above waist level. In July, 1980, her treating chiropractor described claimant's lumbar pain as "excruciating, with [her] neck difficulties almost as bad."

In August, 1980, the Vocational Rehabilitation Division closed her file because of "handicap too severe or unfavorable medical prognosis." Claimant continued to seek medical assistance for pain. In April, 1981, Dr. Neufeld reported that her medical condition was essentially stable and that "[s]he will be restricted to very sedentary-type of work where she is doing only fine manipulations with her hands. Associated with this type of work would be the need for her to be able to get up and move around as needed." In May, 1981, Dr. Franks, claimant's treating neurosurgeon, stated that she had "a significant limitation of range of motion from a partial frozen shoulder, plus * * * continuing symptoms of tingling and discomfort going into the left thumb in the C6 nerve distribution which fits the myelographic defect, and also the EMG abnormality * * *." In October, 1981, claimant underwent a vocational evaluation. The vocational evaluator reported that she has extremely limited transferable skills to be utilized to locate employment in a competitive labor market and that she is vocationally handicapped with an extremely poor prognosis in locating any future employment within her skills and physical restrictions.

In December, 1981, Dr. Franks reported:

"She finds that she cannot walk for more than thirty minutes without having to stop or sit or preferably lie down because the pain gets so severe. When in the kitchen at home, she tries to stand and if over a few minutes, this will also increase the disabling pain in her low back."

"* * * * *

"From a functional point of view [claimant], is unable to work in any activity involving bending, stopping, standing, walking [or], maintenance of a fixed posture. Thus, she needs work that will meet the fact that she is very restricted in her

work activities. She will have pain whether or not she works; but, any activity involving the above functions will increase her degree of distress. She will always need a job in which she is able to change positions at will, to get up and move around, lie down when one fixed position or activity causes an increase of her pain. [Claimant] considers herself totally disabled, and at the age of fifty, not too many people would want to hire her with the significant restrictions placed upon her."

Although Dr. Franks did not feel that claimant was "totally disabled," he stated that "because of her chronic pain in the neck and low back which is exacerbated by activity, that her limitations will be rather prohibitive in her getting any type of reasonable employment."

The record suggests that one of the reasons why claimant has not had surgery is that her condition would not be improved by surgery. Dr. Neufield had noted that he did not feel that surgery would help her low back pain and that an operation would "only be possibly of some help in the neck area."

As detailed above, claimant has suffered continuous and severe pain in her low back, left leg, neck, left shoulder and left arm as a result of her injury. She is restricted in her ability to bend, stoop, walk, reach, stand, sit and maintain any fixed position. She has difficulty sitting for any length of time and is required to change positions frequently. She experiences increased symptoms when standing, walking, bending or engaging in any physical activity. She has a fifth-grade education. For the past 35 years she has been a fry cook. She has no other employment experience. She is incapable of returning to work as a cook and was enrolled in a vocational training program. Because of continual pain and inability to stand or sit for any length of time, she was only able to attend her training program for 2-1/2 hours per day. She completed her training as an electronics component assembler, but her rehabilitation counselor concluded that "her health has so deteriorated and she is in such pain that she is physically capable of doing only homebound employment. This would never provide enough income for a living wage." Home employment was never secured for claimant.

Ultimately, claimant's vocational rehabilitation file was closed, because the Vocational Rehabilitation Division

determined that her handicap was "too severe" to obtain employment.

It appears that in light of claimant's physical limitations, age, limited education and limited employment experience, further efforts to sell her services to an employer would be futile. *Looper v. SAIF,* 56 Or App 437, 642 P2d 325 (1982); *Morris v. Denny's,* 50 Or App 533, 623 P2d 1118 (1981); *Butcher v. SAIF,* 45 Or App 313, 608 P2d 575 (1980). The referee's award of permanent total disability was correct.

Richardson, J., joins in this dissenting opinion.