Argued and submitted November 28, 1983, reversed and remanded with instructions
April 11, 1984

In the Matter of the Compensation
of Keith Phillips, Claimant.

PHILLIPS,
*Petitioner,*

*v.*

LIBERTY MUTUAL,
*Respondent.*

(80-06429; CA A27964)

679 P2d 884

Diana Craine, Salem, argued the cause for petitioner. With her on the brief was Rolf Olson, Salem.

Keith D. Skelton, Portland, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

NEWMAN, J.

Van Hoomissen, J., dissenting.

**NEWMAN, J.**

Claimant appeals an order of the Workers' Compensation Board that reversed the order of the referee and denied claimant permanent total disability. The Board awarded claimant 80 percent loss of his right leg and 60 percent loss of his left leg. We find that claimant is permanently and totally disabled.

Claimant was 60 at the time of the hearing. He is a high school graduate and attended a business school for six months. He has been a dishwasher, cook's helper, waiter, welder and truck driver. He is deaf in his right ear and wears a hearing aide in his left ear. Because of a previously broken jaw and denture problems, his speech is very difficult to understand. Since 1966, he was employed by the county as a janitor and by a daily newspaper as a route carrier delivering newspapers to distributors and to pay boxes.

He suffered compensable injuries to both knees when he fell while working for the newspaper on March 15, 1978. On June 25, 1978, he had surgery for a total right knee replacement. On November 22, 1978, he received a partial replacement of the left knee. On March 17, 1979, Dr. Chester, the surgeon, wrote that claimant "still has significant incapacities for protracted walking, standing, lifting, climbing stairs, squatting and the like. * * * [H]e will have limited function in terms of his work capacity and at best he will be able to perform work in a sedentary capacity." Claimant was examined by three doctors at Orthopaedic Consultants on May 9, 1979, who wrote that claimant "would not be able to return to any of his former occupations and is only capable of doing sedentary activities because of both knees."

In August, 1979, a vocational counselor wrote that while a "return to County employment as a Day Porter or Night Light Janitorial duties is possible," claimant has "no skills transferable to sedentary work and his age and other disabilities would be significant impairments to new unskilled entry level jobs." He found that claimant could not use a telephone. The counselor was "certain that nobody would hire him as a cook, truck driver, or security guard with his many disabilities." On October 5, 1979, Dr. Chester concluded that, although "gainful employment" was feasible "if he could find relatively sendentary work commensurate with his age and training," a return to his previous work was not possible.

The employer offered claimant work as an "inserter," an employe who places inserts into newspapers. An inserter must stand 85 percent of the work time. Dr. Chester wrote that he was unsure if claimant could do the job and recommended a trial period to see "if he is symptomatically able to do this." Claimant did not attempt the job but turned it down because of the requirement of standing. Later, in March, 1980, Dr. Chester wrote that "patient has effected a full adjustment to retirement." He added that "I really feel this is probably the best course of events for him."

The employer then considered offering claimant a job as a night watchman. On June 4, 1981, Dr. Chester wrote:

> "Assuming this to be a quite sedentary activity, I can see no reason why Keith Phillips would not be able to do this, as long as it did not involve significant stair climbing, or walking over protracted distances or that type of thing. It could be just the occupation for him. Hopefully he will see it that way, too."

On August 21, 1981, the employer created a new full-time position of night watchman and offered claimant the job. At the time of the hearing, the employer had not offered the job to anyone else. Although the majority of the night watchman's time would be spent sitting, the job required that he walk through the two floors of the employer's plant every 30 or 45 minutes during an 8-hour work shift, five days a week. Claimant could use the freight elevator to go between floors with minimal use of the stairs. The walking circuit of the building is 1167 feet, or 2-1/2 city blocks. Claimant's uncontradicted testimony was that he could walk only two blocks at a time. He would also be required to use a telephone to report to the night management any unusual observations.

Claimant refused the night watchman's job. He told the business manager, "I don't think I can do it. I can't hear." The referee found:

> "* * * [C]laimant would be required to communicate with others, both face to face and by telephone, in the performance of his job duties. Because of his hearing and speech impediments he would have extreme difficulty doing so. As many of the reports in evidence indicate, claimant is very hard of hearing and is almost as difficult to understand. Having observed him carefully during the hearing I dare say it would be virtually impossible for him to communicate by telephone or CB radio."

Claimant asserts that he is permanently and totally disabled, even though he suffers from less than total physical incapacity, because of non-medical conditions including "age, training, aptitude, adaptability to nonphysical labor, mental capacity, emotional condition, as well as conditions of the labor market." *See Wilson v. Weyerhaeuser,* 30 Or App 403, 409, 567 P2d 567 (1977). The Board, with one member dissenting, believed that claimant had not met the burden of proof described in ORS 656.206(3).[1] The Board stated:

"From this evidence we cannot affirmatively conclude either that claimant has the physical capacity to perform the offered night watchman job or that claimant lacks the physical capacity to perform that job. The Court of Appeals addressed a very similar situation in *Shaw v. Portland Laundry/Dry Cleaning,* 47 Or App 1041, 1044 (1980):

" 'At the hearing before the referee, the employer for whom claimant was working when she became disabled stated that a seamstress position was available in his plant and in effect offered the job to claimant. Claimant had prior experience as a seamstress. She never clearly answered, we find, questions about whether she thought she was able to do that work. There is some indication in the medical evidence that working as a seamstress may involve more sitting than claimant is capable of doing and may involve more manipulation of sewing machine controls with her feet and knees than claimant is capable of doing. Like so many other parts of this record, however, the evidence about claimant's ability to work as a seamstress is inconclusive.

" 'In sum, the medical evidence does not show total disability, and claimant was offered a job that she may or may not be capable of doing. Under these circumstances, we conclude that claimant's failure *at least to attempt* working as a seamstress is the most telling fact that forecloses a finding of total disability.' (Emphasis added.)

"Likewise, in this case, we find that claimant was offered a job that he may or may not be capable of doing and conclude that claimant's failure *at least to try* working as a night watchman forecloses a finding of total disability under ORS 656.206(3)."

---

[1] ORS 656.206(3) provides:

"The worker has the burden of proving permanent total disability status and must establish that the worker is willing to seek regular gainful employment and that the worker has made reasonable efforts to obtain such employment."

██ A claimant, however, need not make efforts to work if those efforts would be futile. As we stated in *Butcher v. SAIF,* 45 Or App 313, 318, 608 P2d 575 (1980):

"We do not believe that the legislature intended that every injured worker, regardless of capacity to do so, must demonstrate an effort to become employed even where it is clear that such an effort would be in vain."

*See also Munger v. SAIF,* 63 Or App 234, 662 P2d 808 (1983); *Fitzpatrick v. Freightliner Corp.,* 62 Or App 762, 662 P2d 8 (1983); *Looper v. SAIF,* 56 Or App 437, 642 P2d 325 (1982). As the Board also stated, if the evidence affirmatively establishes that a claimant is not capable of performing the job, ORS 656.206(3) is not pertinent.

██ We find that, contrary to the circumstances in *Shaw v. Portland Laundry/Dry Cleaning,* 47 Or App 1041, 615 P2d 1134 (1980), cited by the Board, the evidence establishes affirmatively that claimant was unable to do the inserter job or the night watchman's job. It would have been futile for him to attempt the inserter job. The Board did not rule to the contrary. The medical evidence shows that he is unable to stand for the long periods of time that the job requires. The evidence also shows that it would have been futile for claimant to attempt to do the night watchman's job. Dr. Chester wrote that claimant might be able to do the job if it did not require "walking over protracted distances" and "assuming this to be a quite sedentary activity." It is not. Claimant could not have made the repeated walking inspections of the building that the job required. The referee found that it would be "virtually impossible" for him to communicate by telephone. The referee heard claimant's testimony, including that he could not do the night watchman's job, and the referee's determination is entitled to weight. *Emerson v. ITT Continental Baking Co.,* 45 Or App 1089, 1094, 610 P2d 282 (1980). We agree with the referee that claimant is permanently and totally disabled.

Reversed and remanded with instructions to reinstate the referee's order.

**VAN HOOMISSEN, J.,** dissenting.

The issue is whether claimant is entitled to an award for permanent total disability. On *de novo* review, I would

affirm the order of the Workers' Compensation Board. Therefore, I dissent.

No physician has asserted that claimant cannot work or that he is permanently and totally disabled. He does not claim that he suffers from total physical incapacity. In March, 1979, his attending physician, Dr. Chester, indicated that claimant could do sedentary work. Orthopaedic Consultants agreed. In July, 1979, Dr. Chester reported that a return to claimant's *regular* work was guarded but that, in *claimant's* opinion, he would never work again. I understand that report to mean that it was claimant's subjective decision not to work, not Dr. Chester's conclusion that he could not work.[1]

In August, 1979, a vocational consultant indicated that work in selected jobs was possible, but that there was a "Social Security problem." In October, 1979, Dr. Chester reported that gainful employment in relatively sedentary work was feasible. In March, 1980, the vocational consultant reported that there were jobs claimant could do but that he refused to try them and that he had "retired" because of Social Security. Dr. Chester essentially agreed with that conclusion.[2] In June, 1981, Dr. Chester saw no reason why claimant could not accept employment as a night watchman "assuming this to be a quite sedentary activity. * * *. It could be just the occupation for him. Hopefully he will see it that way, too."[3]

The medical evidence does not support a finding that claimant is permanently and totally disabled from physical conditions of less than total incapacity, plus nonmedical conditions, which together result in permanent total disability. *See Wilson v. Weyerhaeuser,* 30 Or App 403, 409, 567

---

[1] Claimant appears to have a strong economic motiviation *not* to work.

[2] Dr. Chester's observation that claimant "has effected a full adjustment to retirement" and that "this is probably the best course of events for him" begs the question. Whether claimant should retire is not the issue. The issue is whether he is entitled to an award for permanent total disability.

[3] The record indicates that the employer created a new full-time position of night watchman and offered the job to claimant and that the employer was willing to accommodate his disabilities by making adjustments in the manner in which he was expected to perform his duties. For example, he would not be required to climb stairs; he could use the elevator.

This result will discourage employers from making work available to their disabled workers. That is not in anybody's best interests.

P2d 567 (1977). Neither does the record support a conclusion that any efforts to obtain employment would be futile, or that he is not capable of performing either of the jobs offered to him by his employer. The record does not even come close to showing that it would have been futile for claimant even to *try* either job. Claimant must comply with ORS 656.206(3).[4]

Claimant's employer offered him two jobs, first, as an inserter, and second, as a night watchman. Detailed testimony, as well as a written job description, attest to the sedentary nature of the latter work. He refused even to attempt to perform either job. At best, the evidence is inconclusive as to whether he is capable of performing either job. Under those circumstances, I understand ORS 656.206(3) to mean that claimant must at least *try* to work.[5]

I conclude that claimant has retired, is receiving social security and does not wish to jeopardize that income by working. I would therefore agree with the Board that his failure at least to attempt working forecloses a finding of total disability. ORS 656.206(3); *Laymon v. SAIF,* 65 Or App 146, 670 P2d 211, *rev den* 296 Or 411 (1984); *Shaw v. Portland Laundry/Dry Cleaning,* 47 Or App 1041, 615 P2d 1134, *rev den* 290 Or 157 (1980).

On its facts, this case cannot be distinguished from our decisions in *Home Ins. Co. v. Hall,* 60 Or App 750, 654 P2d 1167 (1982), *rev den* 294 Or 536 (1983); and *Willamette Poultry Co. v. Wilson,* 60 Or App 755, 654 P2d 1154 (1982), *rev den* 294 Or 569 (1983). In both of those cases, we reversed orders of the Board affirming referees' findings of permanent total disability.

---

[4] ORS 656.206(3) provides:

"The worker has the burden of proving permanent total disability status and must establish that the worker is willing to seek regular gainful employment and that the worker has made reasonable efforts to obtain such employment."

[5] The Board stated its policy approach in this kind of case: (1) If the evidence affirmatively establishes that the claimant is capable of performing the job, then ORS 656.206(3) forecloses an award for total disability; (2) if the evidence affirmatively establishes that the claimant is not capable of performing the job, then ORS 656.206(3) is irrelevant to an award for total disability; and (3) if, as in this case, the evidence is inconclusive, and the claimant may or may not be capable of performing the job, ORS 656.206(3) requires that the claimant do what is reasonable and try to perform the offered employment. I find no fault with the Board's policy or with its application in this case.