Argued and submitted June 12, 1985, reversed; referee's order reinstated January 29, reconsideration denied April 11, petition for review denied April 29, 1986 (301 Or 77)

In the Matter of the Compensation of
James W. Wiley, Claimant,

WILEY,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION et al,
*Respondents.*

(83-04506; CA A34363)

713 P2d 677

Kathryn Tassinari, Eugene, argued the cause for petitioner. With her on the brief were Jerome F. Bischoff and Bischoff & Strooband, P.C., Eugene.

Philip Schradle, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Darrell E. Bewley, Assistant Attorney General, James E. Mountain, Jr., Solicitor General and Dave Frohnmayer, Attorney General, Salem.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Claimant petitions for review of an order of the Workers' Compensation Board reversing the referee's order that held that claimant was permanently and totally disabled. ORS 656.206. The Board awarded claimant 256 degrees for 80 percent permanent partial unscheduled disability. On *de novo* review, we reverse the Board and reinstate the referee's order.

Claimant, a 51 year-old timber cutter, was injured on the job in January, 1981, when he was pinned underneath a tree. He suffered serious pelvic trauma, including bilateral sacroiliac joint separation, bilateral sacral and iliac fractures, separation of the symphysis pubis and three fractures of the left pubic rami. He also sustained an injury to the right knee and suffered sciatic nerve neuropathy. Employer does not dispute that the injuries were both disabling and compensable.

Claimant underwent a long program of treatment and therapy. Dr. Filarski, his treating physician, reported in April, 1981, that he was walking with crutches and in September that he was walking short distances on his heels and toes. On October 21, 1981, however, Filarksi reported that claimant's prognosis was poor and that his only potential for vocational rehabilitation would be in a "very sedentary type of activity."

Also in October, the Workers' Compensation Department referred claimant to Bittersweet Consultant Services to develop a training program. Claimant, who had dropped out of school in the third grade, is functionally illiterate. Bittersweet proposed a tutorial reading program as a preliminary step in his rehabilitation. Although claimant was initially receptive to vocational retraining, he became frustrated with the rate at which he was recuperating physically. In January, 1982, claimant asked Bittersweet to discontinue services.

In July, 1982, employer offered claimant a job as a watchman. Employer proposed to construct a small building from which claimant, seated in a special recliner, could observe gate traffic. It also offered to adjust his working hours to his physical capabilities. He was neither medically stationary nor released for work at the time of the offer, and he rejected it.

In September, Crawford Rehabilitation Services

tested and evaluated claimant's work potential for the Workers' Compensation Department. Crawford concluded:

"At this point it appears that Mr. Wiley can only stand a job that would allow for frequent changes in sitting, standing, and walking. Even with this, it would probably only be possible for him to work if his pain minimized to the level where he could concentrate more fully on a task. Combined with his inability to read or write, it is unlikely that such a job exists for him on today's labor market. It appears that his physical condition lowered his performance potential on every task attempted."

Six weeks later, Dr. Degge, an orthopedist, performed a closing evaluation. He found that claimant had made an excellent recovery from a "very serious pelvic injury." He stated that "after reviewing the job description of Security Watch as proposed by the Bohemia Company, it is this examiner's opinion that [claimant] would be able to work in that capacity * * * starting on an initial duration of 2-4 hours * * *." Filarski responded:

"As a decision must be made, I could not disagree with Dr. Degge's considerations for return to light duty work anywhere from two to four hours and progress [sic] if tolerable. I feel on the other hand that Mr. Wiley's side of this circumstance is to be well understood in the fact that he has had serious pelvic fractures, probably has SI joint arthritis, and is a very serious surgical candidate. Therefore, remaining conservative and considering a permanent disability status might be our only other alternative."

A determination order awarded claimant 65 percent permanent partial disability. In June, 1983, Filarski found that claimant's condition was "slightly worse" than six months before. He stated, "I don't feel the patient could consider even light duty work activity in which standing or walking was required." Claimant requested a hearing on the extent of his disability. Following the hearing the referee ruled:

"This claimant is undoubtedly in an extremely serious condition. I cannot see any work, from a practical standpoint, that the claimant can do. He certainly is not very well motivated to return to work. He refused a token offer made by Bohemia, but I cast some doubt on that offer. It was basically the same as a protective workshop. It does not really represent any real work for the claimant. The doctor said it probably

would have to be limited to three or four hours a day and he'd have to be in a special recliner. There is some question whether claimant could or could not tolerate even that activity. There is certainly very little this claimant can do. I believe that, based on his inability to read and write, his age of 54, and his significant impairment, claimant is permanently and totally disabled, and should be granted that award."

The Board reversed:

"Dr. Degge stated that claimant is capable of performing the security job for two to four hours per day. He stated that it would benefit claimant to make the attempt. Dr. Filarski agreed. Thus the medical evidence establishes that from a physical standpoint alone, claimant could have performed the security job. * * * We find that it would not be futile for claimant to attempt the security job offered by the employer. Because this attempt would not be futile and because claimant has not searched for work and has refused the offered employment we find that he has failed to satisfy the work-search requirements of ORS 656.206(3). Accordingly, we hold that claimant has failed to prove permanent total disability."

We do not agree with the Board's conclusion that petitioner failed to prove that he is permanently and totally disabled.

"The determination of permanent total disability status does not turn upon whether the claimant has money-earning capacity, but rather upon whether the claimant is currently employable or able to sell his services on a regular basis in a hypothetically normal labor market. * * *

"* * * * *

" 'The essence of the test is the probable dependability with which claimant can sell his services in a competitive labor market, undistorted by such factors as business booms, sympathy of a particular employer or friends, temporary good luck, or the superhuman efforts of the claimant to rise above his crippling handicaps.' " Harris v. SAIF, 292 Or 683, 695, 642 P2d 1147 (1982). (Emphasis supplied; citations omitted.)

Although claimant could possibly perform for short time periods, the duties of the security job that employer offered, the medical evidence and the vocational report of Crawford support a conclusion that he could not "sell his services on a regular basis in a hypothetically normal labor market." Wilson v. Weyerhaeuser, 30 Or App 403, 409, 567 P2d 567 (1977).

■     Although claimant's condition satisfies the definition of "permanent total disability" in ORS 656.206(1)(a),[1] he still must show that he is "willing to seek regular gainful employment" in order to qualify for permanent total disability status, unless the attempt would be futile. ORS 656.206(3); *Butcher v. SAIF,* 45 Or App 313, 608 P2d 575 (1980).[2] Employer argues that, because it offered claimant a job that he refused, he did not show that he is willing to seek employment. Accordingly, it argues that he is not permanently and totally disabled.

■     We find, however, that the proffered position as security guard, to work in a specially constructed building lying on a special recliner for a few hours a day, does not qualify as "regular" employment within the meaning of ORS 656.206(3). We find that claimant could not get a "regular" gainful job and that it would be futile for him to seek one. *See Phillips v. Liberty Mutual,* 67 Or App 692, 679 P2d 884 (1984). His crippling handicaps prevented him from selling his services in a competitive labor market undistorted by the sympathy of his employer. *See Harris v. SAIF, supra.* Employer's special offer, and claimant's rejection of it, do not preclude our finding that, as a result of his injuries, claimant is permanently and totally disabled.[3]

Reversed; referee's order reinstated.

---

[1] ORS 656.206(1)(a) provides:

"(1) As used in this section:

"(a) 'Permanent total disability' means the loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which permanently incapacitates the worker from regularly performing work at a gainful and suitable occupation. As used in this section, a suitable occupation is one which the worker has the ability and the training or experience to perform, or an occupation which the worker is able to perform after rehabilitation."

[2] ORS 656.206(3) provides:

"The worker has the burden of proving permanent total disability status and must establish that the worker is willing to seek regular gainful employment and that the worker has made reasonable efforts to obtain such employment."

[3] There is evidence in the record that plaintiff was not well motivated to return to work. His lack of motivation, however, does not bar us from finding on this record that he is permanently and totally disabled.