Argued and submitted August 31, 1987, affirmed on petition; affirmed as modified on cross-petition April 6, 1988

In the Matter of the Compensation of
James W. Adams, Claimant.

ADAMS,
*Respondent - Cross-Petitioner,*

*v.*

EDWARDS HEAVY EQUIPMENT, INC., et al,
*Petitioners - Cross-Respondents.*

(WCB No. 84-10811; CA A41735)

752 P2d 340

David O. Horne, Beaverton, argued the cause and filed the briefs for petitioners - cross-respondents.

Robert Wollheim, Portland, argued the cause for respondent - cross-petitioner. With him on the brief was Welch, Bruun & Greene, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

**NEWMAN, J.**

In this aggravation claim, employer petitions for review of an order of the Workers' Compensation Board that affirmed the referee's award of permanent total disability. Claimant cross-petitions for review of the Board's determination that January 24, 1986, is the date on which permanent total disability payments should begin. On the petition, we affirm; on the cross-petition, we reverse.

Claimant was a heavy machine operator. He injured his lower back and right knee at work in April, 1980. His claim was closed in October, 1980, and he received an award of scheduled and unscheduled permanent partial disability. Between 1980 and April, 1984, he continued to have difficulty with his right knee. He had repeated surgery. Twice he received an additional award for permanent partial disability. The last award was on April 24, 1984, by a stipulated order. Physically unable to return to his previous occupation after his intital injury, he participated in a retraining program to learn small engine repair. He had a heart attack in July, 1982, and by-pass surgery in August, 1982. He made a good recovery and then held short term jobs until he was forced to stop because of his knee and a shortage of jobs due to economic conditions.

On July 12, 1984, claimant underwent exploratory surgery for increasing knee pain. His claim was reopened for medical expenses. In August, Dr. Keist, the treating orthopedic surgeon, stated that he believed that claimant would

> "return to pre-operative status and can be removed from time loss as of September 15, 1984. There should be no change in his permanent impairment award at that time."

In October, 1984, claimant requested a hearing and asked for temporary total disability and a redetermination of permanent partial disability. On December 6, 1984, Keist stated that claimant's condition was medically stationary. On February 11, 1985, claimant's case was again closed by a determination order which awarded temporary total disability, less time worked, from July 12, 1984, through December 6, 1984, but no increase in permanent partial disability.

On February 13, 1985, claimant filed a supplemental

request for a hearing and asked for permanent total disability. In May, 1985, he complained to Keist of severe right knee pain. Keist prescribed physical therapy and attributed the increased pain to irritation of the synovium and scarring. He rated claimant's overall impairment as severe and limited him to walking no more than one hour per day, sitting two hours per day and standing two hours a day. He indicated that claimant could occasionally lift 50 pounds. Subsequently, he authorized time loss from May 22, 1985, to July 15, 1985.

In September, 1985, claimant filed another request for hearing, seeking additional time loss, as well as permanent total disability. On January 13, 1986, Keist wrote:

"This man has multiple orthopedic problems, primarily at this time centered on his right knee. He has had total knee arthroplasty with one replacement. He has continuing complaints of pain and inability to function in his knee. He has objective demonstration of limitation of motion and weakness of his right knee that would make working at anything but the most sedentary work impossible.

"It is possible that this man can occasionally lift 10 pounds, although he had had previous low back difficulty.

"His objective evidence of orthopedic impairment would be in the moderately severe category.

"This man has cardiac problems, psychologic problems and multiple orthopedic problems. His condition is stationary and slowly deteriorating. Treatment would not be beneficial. The overall combination of impairments make this man a total and permanent disability case in my opinion."

At the hearing on January 24, 1986, claimant testified that his condition had worsened after April 24, 1984. He testified that, before that time, he had walked one or two miles daily but now could only walk one-half mile and, even then, only with pain. His testimony was corroborated by Keist's chart notes. Claimant also described his increasingly disabling back pain. He testified that he avoids lifting grocery bags and any twisting, driving or walking down stairs and that, if he sits more than one hour, his leg gets numb. He lies down at least one hour daily to relieve pain and, due to his physical condition, he had had difficulty doing small engine repair work. His last job was in December, 1982. He continued to seek work in 1983, but sometime in 1984 had stopped looking because of his

increased knee and back pain and because, when he told employers of his physical limitations, they would not hire him.

Claimant's vocational expert testified that claimant could no longer perform bench work, given his orthopedic restrictions, and that he would require additional training to do small electrical appliance repair work. That testimony is consistent with the medical evidence. Employer's vocational expert testified that claimant might be able to do small engine or small appliance repair work, but her assumptions about claimant's physical limitations were contrary to the medical evidence.

The referee concluded that claimant was permanently and totally disabled. He first found:

> "He is certainly precluded from performing any of his previous occupations. However, without inclusion of his heart condition, no doctor has expressed an opinion that claimant is permanently and totally disabled. It is a close question but based on the evidence I find that claimant is not totally incapacitated by his pre-injury conditions and the residuals of his industrial injury."

After considering non-medical factors, however, he found that claimant had proven permanent total disability:

> "Considering claimant's age of 65, his receipt of social security benefits for some time, not having worked for over three years and with his physical restrictions on lifting, bending, walking, standing and sitting because of his right knee and low back condition, I find claimant is permanently and totally disabled from working at a gainful and suitable occupation."

He also found that claimant had demonstrated his willingness to re-enter the work force. After his initial injury, he had participated in retraining. He had worked until his heart attack and by-pass surgery and, after recovery, had returned to work until the economy and his physical condition worsened. The referee concluded that it would have been futile for claimant to continue to seek employment. The Board affirmed.

Employer argues that the Board erred in determining that claimant was totally and permanently disabled, because

his condition had not worsened after April, 1984,[1] and he had not proved that he had sought work since that time. ORS 656.206(3).

■ To be entitled to an award of permanent total disability, a claimant must show that, since the last arrangement of compensation, the condition which gave rise to the original award has permanently worsened, *Stepp v. SAIF*, 304 Or 375, 381, 745 P2d 1207 (1987), and that, because of the worsened condition, he has suffered a total loss of earning capacity. *Smith v. SAIF*, 302 Or 396, 401, 730 P2d 30 (1986). If he seeks permanent total disability under the "odd lot" doctrine, he must demonstrate that he is willing to re-enter the work force and that he has made reasonable efforts to do so, unless that would be futile. *Butcher v. SAIF*, 45 Or App 313 (1980).

■ ■ We conclude that claimant's right knee and back have worsened since the April, 1984, stipulated order. Employer presented no medical evidence that claimant's condition was unchanged, nor did it challenge claimant's credibility. Moreover, the referee implicitly found claimant credible. *See Locke v. SAIF*, 21 Or App 725, 726, 536 P2d 534 (1975). We agree with the Board that claimant was totally and permanently disabled for the reasons stated in the referee's opinion and order. Given his physical restrictions, skills and age, it would have been futile for claimant to attempt to find a job.

■ ■ On claimant's cross-petition, he asserts that the Board erred when it determined that his permanent and total disability payments should begin on January 24, 1986, the date of the hearing, rather than on December 6, 1984, when Keist found him to be medically stationary. The effective date of a modification of a permanent disability award is the earliest date when a claimant proves that all elements necessary to his claim existed. *Morris v. Denny's,* 50 Or App 533, 623 P2d 1118, *mod* 53 Or App 863, 867, 633 P2d 827 (1981). Claimant, therefore, is entitled to permanent disability benefits from the earliest date that he can prove that (1) his condition had

---

[1] A claimant has to prove a worsening of his condition after the last "award or arrangement of compensation." ORS 656.273(1). Claimant here contested the February 11, 1985, determination order, so the April 24, 1984, stipulated order is the last arrangement of compensation.

worsened since the last arrangement of compensation in April, 1984, and (2) he was permanently and totally disabled.

■   Keist had rated claimant's impairment in April, 1984, as moderate. On December 6, 1984, he found claimant's condition to be medically stationary, but his notes reveal that he then believed claimant's permanent impairment had not changed after April, 1984. On May 17, 1985, however, Keist found that claimant's knee had "given out on him" numerous times and that he had increased pain and decreased mobility. Keist then rated claimant's impairment as severe. His condition had worsened after April, 1984. In his January 13, 1986, opinion letter, Keist stated for the first time that claimant was totally and permanently disabled. The record shows, however, that all medical factors that Keist relied upon in his letter had existed by July 15, 1985, when he terminated physical therapy and declined to operate, believing that further treatment would not be beneficial. In addition, all vocational and social factors relevant to claimant's permanent total disability existed then. Accordingly, we conclude that claimant's permanent total disability payments should begin as of July 15, 1985.

On petition, affirmed; on cross-petition, modified to provide that permanent total disability payments begin on July 15, 1985; otherwise affirmed.